Charles Jones, Assignee, etc., Respondent, *v.* Thomas Welwood, et al., Appellants.

A submission to arbitrators of an action pending between the parties to the submission, and of "all other actions or causes of action," and of "all other matters in controversy," is a general submission of all questions and controversies between the parties.

Where a submission is full and general of all matters in question between the parties, and the intent appears to have everything decided if anything is, a decision of all matters submitted will be imperatively required to validate the award, and an award determining a part only, is void.

The omission to insert in the submission, in express terms, an "*ita quoad*" clause, does not make a partial award valid.

In cases of doubt, the presumption is in favor of an intention that all matters should be decided.

The parties to an arbitration have the right to submit only a portion of the subjects involved, and an award will not be set aside for not including matters not brought to the attention of the arbitrators.

*It seems,* however, that a partial award in any case will only be sustained when the matters omitted are not necessarily dependent upon and connected with the other points.

(Argued October 9, 1877 ; decided November 13, 1877.)

The nature of the appeal, and the facts appear sufficiently in the opinion. (Reported below, 9 Hun, 166.)

*B. F. Tracy,* for appellants. To justify a court to interfere with an award of arbitrators, on the ground of partiality, it should be plainly established. (*Wood* v. *Aub. & R. R. R. Co.,* 8 N. Y., 160, 168; 50 id., 228.) Misconduct sufficient to vacate an award must consist of acts which evince unfairness or a violation of all principles of a just proceeding, and not merely error of judgment. (*Smith* v. *Cutler,* 10 Wend., 590; *Ketchum* v. *Woodruff,* 24 Barb., 147; *Knowlton* v. *Nickles,* 29 id., 465; *Turnbull* v. *Martin,* 2 Daly, 428.) The court will not interfere when the arbitrators have erred only in regard to a question of law or fact. (*Jackson* v. *Ambler,* 14 J. R., 96; *Ketchum* v. *Woodruff,* 24 Barb., 147; *Emmett* v. *Hoyt,* 17 Wend., 410; *Campbell* v. *Western,*

3 Paige, 124; *Winship* v. *Jewett*, 1 Barb. Ch., 193.) An award that a plaintiff has no cause of action is sufficiently certain and final. (*Wyatt* v. *Curnell*, 1 Downing [N. S.], 327; 1 Pet., 229.) It was no objection to the award that it did not decide all the many separate and distinct matters submitted. (*Merrill* v. *Thompson*, 27 N. Y., 225; *Ott* v. *Schroepel*, 5 id., 482; *Whitney* v. *Cook*, 5 Mass., 139; *Doyle* v. *Rogers*, 5 Wheat., 394; *Rule* v. *Bryde*, 1 Exch., 151; *Davy* v. *Faw*, 7 Cranch [U. S], 171.) A contract to submit to arbitration, like any other contract, may be modified by the parties to it. (*Hays* v. *Hays*, 23 Wend., 363; Morse on Arbitration, 63; *Watson* v. *Trower*, R. & M. N. P. Cas., 17; *Warton* v. *King*, 1 M. & R., 96.) Presumptions will be made to sustain an award of arbitrators. (*Perkins* v. *Giles*, 50 N. Y., 228, 235; *Ott* v. *Schroepel*, 5 id., 482, 484; *Karthaus* v. *Hass Ferren*, 1 Pet., 222; *Pierce* v. *Morrison*, 5 Hun, 235; Morse on Arbitration, 179.)

*Moody B. Smith*, for respondent. The award was void for partiality. (*In Re Livingston*, 34 N. Y., 556; *Bates* v. *Voorhis*, 20 id., 528.) There could be but one award. (Morse on Arbitration, 370; *Winter* v. *Munton*, 2 Moore, 723.) An award must be co-extensive with the submission. (*Karthaus* v. *Ferren*, 1 Pet., 222; Morse on Arbitration, 341; Russel on Awards [4 Eng. ed.], 246; *James* v. *Thurston*, 1 Cliff., 367; *Randall* v. *Randall*, 7 East, 81; *Edwards* v. *Stevens*, 1 Al., 315; *Barney* v. *Brewster*, 14 N. H., 49; *Summends* v. *Swaine*, 1 Taunt., 554.) The intention of the parties is the test as to the meaning of the submission. (Morse on Arbitration, 342, 345, 346, 347; Russel on Arbitration [3d ed.], 249; 3 M. & W., 194; *Bradford* v. *Bergen*, Willes, 268; *Ott* v. *Schroepel*, 5 N. Y., 486; 11 Gold., 482; *Wright* v. *Wright*, 5 Cow., 197.) The award must be final. (Morse on Arbitration, 385.)

Church, Ch. J. This is an appeal from an order of the General Term, in the second judicial department, affirming

an order of the Special Term, vacating an award of arbitrators.

The ground upon which the award was set aside, and the only ground which upon the facts presented would justify it, is that the arbitrators so imperfectly executed their powers, that a mutual, final, and definite award on the subject-matter submitted was not made (2 R. S., 561), and a brief reference to the leading facts seems to be necessary.

The controversy was somewhat complicated. In 1870, Abby Welwood, the wife of Thomas Welwood, owned a large tract of land, in Suffolk county, which was managed by the husband. The latter made an arrangement with Charles S. Schleier, by which the land was to be divided into lots, and sold with a view of establishing a village or city. Schleier undertook to do the business, sell the lots, make improvements, etc., and beyond an agreed sum was to share in the profits. The business was very successful; a town was founded called the city of Breslan, a large number of lots were sold, very large sums of money received, extensive improvements made, other lands were purchased, deeds taken in the name of Mrs. Welwood, and lots sold therefrom by Schleier. The speculation seems to have been prosperous, and the business was continued until the fall of 1871, when disputes arose between the parties as to their accounts, and their respective rights in the property contracted to be sold, and that remaining unsold; Schleier claiming, among other things, that the lands purchased by the Welwoods subsequent to the first arrangement was agreed to be purchased on joint account, and that he was entitled to have the title of his interest in his own name.

On the 11th of January, 1872, the parties entered into a written contract, with a view of adjusting and settling their rights and all disputes between them; the principal feature of which was that Mrs. Elwood agreed to sell to Charlotte A. Schleier, wife of Charles S. Schleier, the unsold lots of which she had a title, at specified prices, and to convey the same to the latter, or to any person or persons that she might

direct, and the contract contained various detailed provisions for carrying out the same, and other provisions not important now to notice.

The parties acted under this contract until the month of April, 1872, when each claimed that the other had broken it, and the Welwoods gave the Schleiers notice, in pursuance of the terms of the agreement, that they elected to terminate it, and regard it at an end, which the Schleiers allege they acquiesced in.

After this various actions were commenced, and prosecuted to a greater or less extent until October 22, 1875, when it was agreed to submit the matters in controversy to arbitration.

There were three submissions. No. 1, between Charles Jones, assignee of Charles S. Schleier (the latter having been declared a bankrupt), and Thomas and Abby Welwood.

In submission No. 2, both Schleiers and both Welwoods were parties, and also several other persons, who were parties to actions pending, in which some part of the general controversy between the principal parties was involved.

Submission No. 3 was between one Scott and the Welwoods, respecting the sale of some of the lands in controversy. After a hearing before the arbitrators, the latter, on the 2d day of May, 1876, made an award, by which it was decided that Abby Welwood was seized in fee of the lands described in the complaints in actions numbers one and two, free from any claim of Charles S. Schleier; and that all claims, and demands, and disputes of the parties were merged in, and were satisfied and discharged by, the contract of January 10, 1872; and they ordered judgment dismissing the complaints in said actions. The award concludes as follows: "This award is not intended to determine any of the rights of either of said parties arising under the contract of January 10th, 1872."

It is evident that the arbitrators did not intend to make a final award upon all matters submitted. This is apparent, as well from the reservation contained in the award as from its

limitation to a disposition of two only of the nine actions submitted. The question is, whether this was justified — first, by the terms of the submissions; or second, by the consent or action of the parties at the hearing.

The submissions are substantially alike in form, and are very comprehensive. Submission No. 2 specifies nine actions, which are submitted; "and all other actions and causes of action." The language comprehends every dispute or controversy between the parties. Submission No. 1 specifies, "and all other matters in controversy between Charles Jones, assignee, etc., is a party of the one part, and the said Welwoods or either of them are parties of the other part; and all contracts between the said parties or either of them, or between the said Welwoods and the Schleiers or either of them, arising out of or in any way involved in the foregoing named matters or controversies; and especially a certain contract dated January 10th, 1872, between Abby and Thomas Welwood and Charlotte A. Schleier, and guaranteed by Charles S. Schleier." Although this submission was not signed by Charlotte A. Schleier, it is pertinent upon the question as to the matters intended to be submitted.

The submission of a cause pending "and all other demands," has been regarded as a general submission of all questions and controversies between the parties (2 Caines, 320), and a submission of a cause pending, "and all other demands and costs already accrued on or growing out of said suit," was construed as a reference of all demands between the parties. (22 Maine, 240 ; Morse 59.)

The language in these submissions could not have been more full and general, and there is no room for doubt that everything was submitted, and we are next to inquire whether everything was to be decided if anything was. The general rule is, that the award must be co-extensive with the submission, and that it must be a final determination of the matter submitted. The old rule was that unless the submission expressly made it conditional under an "*ita quoad*" clause, that all matters in dispute were to be adjudged, an award

of a part only was good ; but this rule has been very much modified both in England and this country. (3 M. & W., 198, and cases cited.) While the conditional clause retains its full force when inserted, and renders an award void, if only a part of several matters submitted are passed upon, (5 Cowen, 197,) the omission of that clause in terms will not necessarily justify a partial award. In *Bradford* v. *Beavan* (Willes, 270.) WILLES, Ch. J., said : " Were it not for the cases, I should be of opinion that where all matters were submitted, though without such condition, all matters must be determined, because it was plainly not the intention of the parties, that some matters only should be determined, and that they should be at liberty to go to law for the rest."

The tendency of later decisions has been in this direction. Arbitration contracts should be construed like other contacts, and the same rules applied, with a view of arriving at the intent of the parties. They may provide either expressly or by implication for partial or separate awards. (5 N. Y., 482.) In cases of doubt, the presumption is in favor of an intention that all matters should be decided. The general rule, as now settled, is well expressed by Mr. Morse in his work on Arbitration, p. 342. " The court, will look at the language of the submission in its every part, and from a consideration of the whole, will determine the matter of intent. If the reasonable construction appears to be that the parties intended to have everything decided, if anything should be, then a decision of all matters submitted will be imperatively required ;  *  *  *  but if anything in the submission indicates a contrary purpose, an award determining a part only of the matters submitted will be sustained."

The *ita quoad* clause was not inserted in these submissions in express terms, and we must construe the language employed in accordance with this rule. It is recited that the submissions are made " in order to settle without further litigation the many actions and causes of action existing," etc. The

contracts provide that the arbitrators should decide according to law and equity, "and their decision shall be the final decision between the parties." They also provide that the decision shall be the judgment of the court in each case; and they do not confine the arbitrators to any particular form of judgment, but authorized them to award acts to be done and performed without a formal judgment, and they are authorized to call in an umpire upon any intermediate questions, "or in the final decision." These provisions fairly import a single award or decision embracing all the matters submitted. They speak of *the* decision, and *the final* decision. This is the only way of attaining the expressed object of entering into the submission, viz., to settle all controversies without further litigation ; the large discretion conferred in determining the nature of the awards is significant also of a design to embrace every subject-matter submitted.

The arbitrators were not confined to the ordinary form of judgments, but were at liberty to award in respect to specific acts.' A presumption of an intention to require every matter to be determined arises also from the general circumstances. The interests were very large, and involved in the utmost confusion and complication, in some of which other persons were concerned, and the success of the enterprise itself may have been deemed to depend upon a full and final adjustment of all matters ; the questions were so intermingled and dependent, as to render finality desirable, if not indispensable.

When it was so clearly the intent of the parties to have a final adjustment of everything, and when they have, in language, certainly not repelled, but fairly expressed such an intention, there is no alternative for courts but to carry out their intent and make it effectual. When everything is submitted, it requires clear language to justify a partial award. The parties might not have been willing to submit anything, unless all that was submitted was to be decided.

I am unable to find in the contracts any color for a construction justifying a partial award. There was no practical difficulty in including the entire award in one instrument,

although it would embrace different subjects and different parties; but, if contained in different instruments, made at the same time, it would be regarded a single award. (5 N. Y., 486.)

It is claimed that the two actions only of Jones, assignee, designated as one and two, were tried and submitted by the parties; and hence, that it was competent for the arbitrators to confine their award to these two actions. The parties had an undoubted right to submit a portion only of the subjects involved, and an award will not be set aside for not including matters not brought to the attention of the arbitrators. (9 Mass., 320; 1 Pet., 222; 1 Seld., 482; 20 Pick., 531.)

The fact that the submission was confined to these two actions is disputed; but, assuming that it was as claimed, this award cannot be sustained. Both actions were commenced by Jones, assignee, and in one of them, Mrs. Schleier was made a defendant. The complaint contains a general history of all the transactions between the parties, including the making and rescinding of the January contract, and demands an accounting and various other relief. If the action had been tried in court, and it had appeared that all rights and interests of the husband had been merged in the contract of January 10th, and thereby became vested in Mrs. Schleier, it would have been competent under the Code to have rendered judgment between the latter and the Welwoods (Code, § 274); and in connection with the clause in the contract submitting all causes of action between the parties, not only the power, but the duty to do this, is quite apparent.

The learned arbitrators decided a single question of fact, that the January contract was intended as a settlement up to that time, and the legal conclusion followed that Mrs. Welwood held the land, discharged from all claims of Mr. Schleier. By stopping at the execution of that contract, they only arrived at the threshold of real controversy. Other questions of great interest to the parties were patent, and pressing upon the attention of the arbitrators.

If the contract of January 10th was rescinded, or put an

end to, as seems to have been substantially claimed in the pleadings on both sides, what was the effect of it upon the rights of the parties? Were the parties remitted to their original rights, except the substitution of Mrs. Schleier for her husband, or were all rights of the Schleiers forfeited, and was there a right of redemption, and upon what terms? What were the rights of the parties to the uncollected moneys for lots previously sold; $22,000 of which was by the contract to be paid to Mrs. Welwood, and the remainder, a larger sum, retained by Mrs. Schleier? And what were their rights in the avails of land to be sold, and in lands contracted to be purchased by the Welwoods, one-half of which Mrs. Schleier was to have upon paying one-half of the purchase-money, and the other half she agreed to purchase at a fixed price? And finally, what was the state of the accounts between the parties?

These questions were involved in these two actions, in connection with the submissions, and they were necessarily brought to the attention of the arbitrators, as appears not only by the reservation in their award, but by the pleadings, contracts, and evidence produced. (7 East, 80.)

I infer that the learned arbitrators supposed that they had a right to make an award in the nature of an interlocutory judgment; and then proceed and make further awards afterwards. In this, I think, with great respect, they were mistaken. It is claimed in the affidavits, on the part of the appellants, that a supplemental submission was made authorizing this to be done; but no such paper was produced, and it is denied that it was executed; and besides, the arbitrators in their award state that they acted under the original submissions. But if a partial award had been authorized by these submissions, it would have been difficult to sustain this award, for the reason that it does not dispose of any one controversy. It determined only a single question of fact, and a single question of law which resulted from the fact found; while the undecided questions were so connected as to form a part of the controversy, and render their decision necessary.

It is only when the matters omitted are not necessarily dependent on, and connected with the other points, that a partial award will be sustained. (1 Taunton, 549, per CHAMBER, J.)

In any view of the case, I do not see how this award can be sustained. The order vacating it must be affirmed.

All concur, except FOLGER and MILLER, JJ., absent.

Order affirmed.