**In the Matter of the Arbitration of Certain Controversies between COFINCO, INC., Petitioner,**
**and**
**BAKRIE & BROS., N. V., Respondent.**
**No. 75 Civ. 2147.**

United States District Court,
S. D. New York.

June 11, 1975.

Frans J. J. Van Heemstra, New York City, for petitioner.

Moses & Singer, New York City, for respondent; Harvey A. Strickon, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

This is a petition, brought on for decision by a motion, to confirm arbitrators' awards. There is a cross-motion to va-

cate. There are two awards, relating to a dispute arising from deliveries under two contracts for the sale of green coffee by respondent to petitioner. The allegedly contaminated coffee arrived in a single shipment and led to identical awards about an essentially unitary controversy. It is convenient and sufficient hereafter to refer to the contract, the dispute, and the award in the singular.

The coffee shipped under the contract arrived in New Orleans on May 9, 1974. It appears to be undisputed that there was some pepper mixed with the coffee in some or all of the bags. Respondent seller evidently conceded that equipment in which the coffee was processed had been used for pepper before the coffee went through it, but contended that only the first few of the 1875 bags involved had become contaminated as a result.[1] Petitioner claimed that the admixture had spoiled, or at least severely diminished the quality of, the entire shipment.

The contract provided for arbitration of controversies under the Rules of the Green Coffee Association. On June 12, 1974, petitioner instituted the proceeding that led to the award now in dispute. After an unsuccessful attempt by respondent to have a state court stay the arbitration as time-barred—a subject, as will appear, which was to remain significant—the case came before a panel of three arbitrators. As a first line of defense under the governing Association Rules, respondent urged that the controversy involved only "a question of quality," and that it was accordingly required for various reasons to be resolved adversely to petitioner. Specifically, respondent argued, first, that the proceeding was barred because a claim relating to quality was required under the contract to be brought within 15 days after discharge of the coffee from the vessel.[2] In additional "affirmative defenses" respondent argued variously that petitioner's complaints with respect to "quality" were precluded because sampling and other procedures prescribed by the Rules had not been followed. These additional points are not significant for present purposes.

In an oral proceeding before the three-member panel on February 3, 1975, a limited and plainly incomplete record of evidence was created. Documents presented by petitioner contained conflicting indications as to whether all or less than all of the bags of coffee had pepper in them. There was no sufficient basis for knowing the quantity of pepper in any bag, respondent having contended, among other things, that the proportion was so slight as to approach or reach nondetectability. Pressing as initial points his affirmative defenses, counsel for respondent stated explicitly that if the proceeding were not held barred as a fatally tardy or otherwise defective "quality" dispute, he would expect an evidentiary hearing at which petitioner would "be put to his proof" and subjected to cross-examination on the contention that there had been "a substantial admixture of pepper * * *." The chairman of the panel acknowledged the request, and the panel adjourned to consider the threshold questions. Referring to petitioner's demand that evidence be heard and tested if the panel concluded that it should reach the merits, the chairman said: "I will adjourn that portion of the Arbitration."

As the matter developed, there was no occasion for the panel of three to reconvene and hear further evidence; respon-

---

1. However this strikes an amateur coffee drinker, respondent informally advises the court that it is common practice, at least in Indonesia, to use the same conditioning equipment for both coffee and pepper, though presumably cleaning it between such uses. This is, of course, among the range of factual topics for the arbitrators rather than the court.

2. The state court had evidently ruled that it was for the expert arbitrators to determine whether the dispute should be characterized as one concerning "quality" for whatever purposes might flow from the characterization.

dent prevailed at that stage on what amounted to its motion to dismiss. Later on the afternoon of February 3, 1975, the three arbitrators held unanimously in a written award that the proceeding was a "quality arbitration" and that it was indeed "time barred."

Respondent exercised its right of appeal to a five-member panel in accordance with the Association's Rules. Pertinent now among those Rules is Rule VII ("Appeal"), subdivision 4, which provides that

> "an appeal shall not constitute a new trial or hearing nor shall new evidence or testimony be offered or received. The appeal shall be considered solely on the record, documents and evidence presented to and considered by the original panel coupled with such arguments as the parties may wish to present."

Though it came to a bad end anyhow, the appeal panel appears to have proceeded in essential compliance with the quoted provision. It heard argument and considered the result below. It took no new evidence on the merits,[3] the chapter that had been "adjourned" without day by the three-member tribunal. Nevertheless, by a vote of four to one, the appeals group not only reversed the decision below but made a purportedly final award in petitioner's favor. In laconic terms causing no surfeit of enlightenment, this appellate award said: "The coffee delivered was not a proper tender under the contract and accordingly the buyer, Cofinco, shall receive from the seller, Bakrie all monies paid for the coffee from date of payment of documents on March 15, 1974." Without specifying amounts, this award also gave petitioner various "accrued expenses" (e. g., for insurance, entry charges, demurrage) and interest "at the average

prime rate," all to be paid within 30 days.

It is this appellate award which the court is now asked to enforce or vacate.

 The governing law is familiar and profoundly favorable to the arbitral process. Given the rules strongly supporting arbitral judgments as final within the province the parties have given to their chosen forum, only a miniscule proportion of awards is vulnerable in court. The award before us falls squarely and patently within this minute class.

The appeals panel made a final ruling on questions that had been expressly postponed below, where it had been recognized—as the panel would have been required to recognize in any event—that the basic right to present and test evidence on issues of fact had not been accorded. There was never occasion to hear this evidence in the first instance. The appellate panel was barred from receiving it and did not purport to receive it. The panel of five merely purported to decide without leaving an opportunity for the evidence to be heard at either level. The result of the short circuit effected on appeal was a basic species of arbitral "misconduct"—"in refusing to hear evidence pertinent and material to the controversy * * *." 9 U.S.C. § 10(c). It makes no difference that the appellate panel may have acted only in neglectful disregard rather than by explicitly "refusing" to hear the evidence The fundamental right to be heard was grossly and totally blocked.

An alternative way of making the same point is to declare, as this court does, that the arbitrators on the appeal "exceeded their powers * * *." Id. In the nature of the appeal proceeding, and under their own Rules preventing them from receiving evidence, the appel-

---

3. The appeal proceeding was reopened after the initial presentations to hear argument whether the panel should consider some coffee samples in the possession of the Secretary of the Association. There is some uncertainty whether these were part of the initial panel's record and whether they were, in any event, examined by the appellate group. The subject is noted here merely to acknowledge its existence. It is of no moment now.

late arbitrators could do no more than affirm or reverse the holding that the matter was a quality arbitration barred by delay. Having found that the "quality" characterization was wrong (a determination respondent does not, and probably could not, attack as a subject for judicial revision), the appeals panel should have stopped and remanded for the adjourned evidentiary hearing at the initial level.

Having proceeded beyond its proper competence, and lacking an evidentiary record sufficient for a sound and complete resolution, the appeals panel also managed to exercise its powers "so imperfectly * * * that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U. S.C. § 10(d). The goal of the proceeding was, and remains, a money award. It is not sufficient to leave open matters like "accrued expenses," interest, and the like, which could entail large sums and disagreements confided to the arbitral jurisdiction. Unless items like these are handled by agreement of the parties, the arbitrators should hear them, taking relevant evidence as needed, and decide them, not leave them for decision somewhere else or at some other time.[4]

While the award must be vacated, it should be deemed final in one respect. As noted above, the appellate tribunal had power to reverse, and obviously did reverse, the ruling that this was a time-barred quality arbitration. No sound ground is suggested, and the court perceives none, for nullifying that determination. The result of today's decision, therefore, will be a remand for a hearing at the *nisi prius* (three-member) stage into the questions of fact and law on the merits that have not thus far been fairly heard anywhere. See 9 U.S. C. §§ 10(d) and (e), 11(b).[5]

Settle a final decree.

---

4. Anticipating possible difficulty on this score, petitioner suggests that the court either accept its computation of the amounts in question or confirm everything else, retain jurisdiction, and "remand the proceedings for such confirmation only to the Panel of Arbitrators which made the award." If something like the latter course might be adequate in some other case, it cannot be followed here because of the broader infirmities in the award. It is not in any case a procedure to be desired.

5. The concept of "remand" may be imperfect. The court does not pretend to require or assume that the same three-member panel will be, or must be, reconvened as the tribunal of first instance. The holding here is simply that, whoever composes the panel at the reopened trial-level proceeding, the issue as to "quality" should be deemed concluded in petitioner's favor.