**In the Matter of the arbitration between
PUERTO RICO MARITIME SHIPPING
AUTHORITY, Petitioner,**

v.

**STAR LINES LTD., Respondent.**

**No. 78 Civ. 873 (RLC).**

United States District Court,
S. D. New York.

July 14, 1978.

Austrian, Lance & Stewart, P. C., New York City, William Karas, Washington, D. C., and Sandra Gale Behrle, New York City, of counsel, Galland, Kharasch, Calkins & Short, Washington, D. C., for petitioner, Puerto Rico Maritime Shipping Authority.

Curtis, Mallet-Prevost, Colt & Mosle, New York City, Peter Fleming, Jr., Caren Brutten, and Eliot Lauer, New York City, of counsel, for respondent, Star Lines Ltd.

## OPINION

ROBERT L. CARTER, District Judge.

Petitioner moves this court, pursuant to 9 U.S.C. § 9, for an order confirming an arbitration award dated February 1, 1978; respondent cross-moves to have that award vacated under 9 U.S.C. § 10(d). For the reasons set forth below, the award is confirmed in part and vacated in part.

### Facts

The arbitration proceedings that underlie the present action arise out of a principal-agency relationship between Puerto Rico Maritime Shipping Authority ("PRMSA") and Star Lines Ltd. ("Star Lines"). An outline of the history of that relationship is related in two earlier opinions of this court in another action between PRMSA and Star Lines,[1] with which familiarity is assumed, and will not be rehearsed in detail here. It is sufficient for the purposes of this opinion to note only that PRMSA is the owner of the S.S. Puerto Rico, a cargo transport ship, and that in May of 1976 PRMSA and Star Lines entered into a contract under which Star Lines was PRMSA's agent for the purposes of servicing and booking cargo for the S.S. Puerto Rico. That relationship was dissolved, prematurely, in February, 1977, when PRMSA gave notice of termination of the agreement. In its wake the agreement left various disputes between the parties concerning their respective obligations under the contract, and pursuant to Article 16 of the contract, these disputes were submitted to binding arbitration in New York initiated by Star Lines.[2] PRMSA made twenty-two separate claims against Star Lines and Star Lines stated ten claims in return.[3] Each party denied most of the

---

1. In 77 Civ. 1968, Star Lines sued PRMSA and another entity, charging the defendants, *inter alia,* with antitrust law violations in connection with PRMSA's termination of the agency agreement. In that action, the court has already denied PRMSA's motion to transfer the suit to the District of Puerto Rico, 442 F.Supp. 1201 (1978), and PRMSA's motion for summary judgment, May 2, 1978, 451 F.Supp. 157.

2. In addition to the arbitration proceedings, Star Lines also commenced an antitrust action against PRMSA. *See* note 1, *supra.*

3. The parties did not draw up any formal submission agreement, but rather, detailed their several claims against each other in an exchange of documents before the arbitration

commenced. To give some indication of the nature of these claims, a sampling of them is set out below.

PRMSA against Star Lines

| | |
|---|---|
| Equipment damage, actually invoiced to date of submission | $117,161.77 |
| Equipment rental, per diem on units not returned per contract, as of 8/12/77 | $338,084.36 |
| Suspension of service | $ 11,200.00 |
| Note receivable | $ 60,000.00 |
| Breach of Article 6: Star Line's unauthorized appointment of a subagent | (To be quantified) |
| Unpaid freight | $550,000.00 |

The sum of PRMSA's quantified claims as of November 15, 1977, was $1,674,975.76.

claims of its opponents, and on the remaining claims, admitted liability while contesting the amount of money due. The present action concerns only one of PRMSA's claims against Star Lines.

As agent for PRMSA, the owner of the ship, Star Lines collected freight payments from shippers who shipped goods on the S.S. Puerto Rico. The agency agreement provided, however, that any such funds collected by Star Lines "are exclusively the property of" PRMSA and "shall belong solely to [PRMSA] free and clear of any claims of [Star Lines] or its creditors."[4] PRMSA claimed before the arbitrators that Star Lines remained in possession of $550,000 in freight monies belonging to PRMSA. *See* note 3, *supra*. Star Lines' response to this claim was that it "admits it has collected approximately $180,000 in freight. This sum is due PRMSA and will be applied as a set-off against Star Lines' recovery in this arbitration." PRMSA moved the arbitrators to issue an "interim award" on the sum of freight money admittedly owed by Star Lines, and the motion was granted.

The arbitrators ruled that Star Lines was liable for the sum admittedly owed on this claim, and, after the submission of briefs on whether arbitrators had the power to issue interim determinations on less than all the claims for money submitted to arbitration, leaving the other claims for later resolution, decided that they did have that power. Thus, the arbitrators directed that Star Lines pay PRMSA $180,000, "along with an accounting therewith," and also, within sixty days of the interim award, "account for and pay over to PRMSA such other freight monies as are or may come into its possession." Following Star Lines' failure to pay over the $180,000 within the period specified in the award, this suit to confirm the award was instituted. It is the understanding of the court that proceedings on the remaining claims between the parties are continuing at present before the arbitrators.

### Discussion

■ Section 9 of Title 9 of the United States Code provides that, upon the satisfaction of certain conditions not at issue here, "the court must grant . . . an order [confirming the arbitration award] unless the award is vacated, modified, or

Footnote 3—Continued

Star Lines against PRMSA

| | |
|---|---|
| Commissions due | $195,089.06 |
| Reimbursement for administrative expenses from March 18 to April 2, 1977 | (amount not specified) |
| Reimbursement for expenses incurred in a particular port | $235,899.00 |
| Reimbursement for phase-out expenses | $148,000.00 |
| Breach of Article 23: PRMSA's provision of services similar to those provided by Star Lines | about $1 million. |

Star Lines did not total their quantified claims.

4. Article 7 of the agreement provided, in relevant part:

"Agent hereby acknowledges that any freight or other monies collected by Agent on behalf of Principal . . . are exclusively the property of Principal [and] that such monies and/or funds are collected by Agent as agents on behalf of Principal, and Agent shall deliver such monies and/or funds so collected to the possession or account of Principal without delay.

. . . . .

It is expressly understood and agreed that any monies and/or funds . . . collected by Agent on behalf of Principal . . . shall belong solely to Principal free and clear of any claims of Agent or its creditors, and Agent shall use due care in handling these monies and/or funds exclusively as agent of Principal and on Principal's behalf.

. . . . .

Principal shall open bank accounts . . in the name of Principal and . . . designated as the Freight Bank Account. Agent shall promptly deposit in the Freight Bank Account all freights and other charges, in full, and without setoffs or deductions, collected by Agent on behalf of Principal. Withdrawal or transfer of funds from the Freight Bank Account shall be exclusively a prerogative of Principal."

corrected as prescribed in Sections 10 and 11 of this title." The only relevant portion of either of these latter sections provides that the court "may make an order vacating the award . . . (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(d). It is thus this court's duty to confirm the award unless § 10(d) precludes confirmation.

■ In that regard, it is important to note what is not at issue in this case. No question is presented concerning the correctness of the arbitration decision regarding the freight money.[5] Neither is there an issue with regard to the arbitrators' power to regulate and shape the order and form of the proceedings before them. Nor is the wisdom of the arbitrators' determination to consider the freight claim separately and before any of the other claims directly under review here. The sole problem raised by these motions is whether this court has the power to confirm an award that disposes of only part of the matter submitted to arbitration, leaving the rest to later resolution.

While the arbitrators' award has three elements—the accountings, the award of $180,000 in freight monies admittedly held by Star Lines, and an order to pay over "such other freight monies" which may be held by Star Lines—the parties in their papers have focused exclusively on that portion which awarded the sum of $180,000. Perhaps under the influence of that distorting focus, the parties have conceived and

argued the case as if the arbitrators had issued an award which only ordered the payment of the $180,000 and, more importantly, as if the arbitrators' award had fully determined PRMSA's freight money claim. If that were the case, the award might well have been confirmable.

■ It is the general rule with regard to the confirmability of arbitration awards that, in order to be "final" and "definite," the award must both resolve all the issues submitted to arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award. *See, e. g., Cofinco, Inc. v. Bakrie & Bros., N. V.,* 395 F.Supp. 613, 616 (S.D.N.Y.1975) (Frankel, J.); *Mobil Oil Indonesia v. Asamera Oil (Indonesia),* 43 N.Y.2d 276, 401 N.Y.S.2d 186 (1977); *Herbst v. Hagenaers,* 137 N.Y. 290 (1893); *Jones v. Welwood,* 71 N.Y. 208 (1877); *Wolff & Munier, Inc. v. Diesel Construction Co.,* 41 A.D.2d 618, 340 N.Y.S.2d 455 (1st Dep't. 1973), *appeal after remand,* 44 A.D.2d 530, 353 N.Y.S.2d 22 (1st Dep't. 1974), *aff'd,* 36 N.Y.2d 750, 368 N.Y.S.2d 828 (1975); *Hoffman v. Harry Greenberg Co.,* 109 Misc. 170, 178 N.Y.S. 398 (1st Dep't. 1919); 5 Am.Jur.2d Arbitration & Award §§ 136, 141, 142.[6] There is, however, an exception to this rule: if an award is valid in part and invalid in part, and the valid portion concerns claims that are "separable" from and "non-dependent" on claims covered by the invalid portion, the valid portion of the award is confirmable, notwithstanding the absence of an award that finally disposes of all the claims that were submitted to arbitration. *Moyer v. Van-Dye-Way Corp.,* 126 F.2d 339 (3d Cir. 1942).[7]

---

**5.** Indeed, the correctness of the award, in law or fact, is not subject to judicial review, absent "manifest disregard" of the law or "irrationality." *I / S Stavorg v. National Metal Converters, Inc.,* 500 F.2d 424, 427–32 (2d Cir. 1974).

**6.** Because "[t]he federal Arbitration Act is the same or almost the same as the arbitration law in New York . . . 'the state practice may be regarded as highly persuasive, even if not controlling'." *Island Territory of Curacao v. Solitron Devices, Inc.,* 356 F.Supp. 1, 11–12

(S.D.N.Y.) (Wyatt, J.), *aff'd,* 489 F.2d 1313 (2d Cir. 1973), *quoting The Hartbridge,* 57 F.2d 672, 673 (2d Cir. 1932). It is thus appropriate to look to New York State cases for illumination on the meaning of the "finality" and "definiteness" requirements of the federal statute which governs here.

**7.** Although the court in *Moyer* was interpreting New York law, the opinion may be properly relied on here. *See* note 6, *supra.*

*See also, Herbst v. Hagenaers, supra,* 137 N.Y. at 296; *Jones v. Welwood, supra,* 71 N.Y. at 216. While there is little case law which illuminates the precise contours of the separability doctrine outlined in these cases, it would appear that PRMSA's claim regarding the freight monies is "separable" from the other claims at issue between the parties within the meaning of that doctrine. Consequently, if the award before the court had resolved the entirety of PRMSA's freight monies claim, it would probably have been confirmed. *See Moyer v. Van-Dye-Way Corp., supra.*[8]

But, as is apparent from the award itself, the arbitrators did not do that. Rather, the arbitrators granted PRMSA a quantified award only to the extent that Star Lines admitted liability on PRMSA's claim, and with regard to the rest of PRMSA's claim, merely ordered Star Lines to "pay over . . . such other freight monies as are or may come into its possession." This latter part of the freight monies award is, quite simply, an insufficient and unconfirmable resolution of the freight monies dispute. *See Herbst v. Hagenaers, supra.* "The goal of the proceeding was, and remains, a money award," *Cofinco, Inc. v. Bakrie & Bros., N. V., supra,* 395 F.Supp. at 616, and a declaration of liability which leaves the question of the amount of money owing unanswered and the possibility of further disputes between the parties open

---

8. In *Moyer v. Van-Dye-Way Corp.,* arbitration was initiated between a union and a factory owner concerning the union's claims regarding wage payments and a fund entitled the "Dyers' Welfare Account." The arbitrator awarded the union some $2,000 on the wage payment claim; with regard to the welfare fund claim, he awarded the union the sum that was then in the fund, but declined to make any award concerning amounts withdrawn from the fund, instead directing the parties in effect to settle that issue between themselves. The union then sued for a judgment on the award and, in a second count, for monies withdrawn from the welfare fund. The District Court upheld the award except for the sum representing the balance in the welfare account, but ruled in defendant's favor on the second claim. The defendant appealed. The issue on appeal was whether the arbitrator's "failure . . . to settle all the questions which he was supposed to determine" precluded enforcement of what he did decide. *Id.* at 341. Relying on *Herbst v. Hagenaers, supra,* and *Jones v. Welwood, supra,* the court ruled that it did not, on the ground that "the parts of the award . . . [were] clearly separable and non-dependent." *Ibid.* After noting that the District Court had modified the award by striking the portion regarding the welfare account, the Court of Appeals reasoned that "[t]he claim for the [wage payments] stands as a separate item. No further resort to either negotiations, arbitration or litigation will be required if this judgment is upheld." *Ibid.*

The distinctions that Star Lines draws between *Moyers* and the case at hand are not persuasive. Star Lines correctly points out that in *Moyers* the award was the arbitrator's only and "final" decision of the matters submitted to him, while in this case the award is self-declaredly interim and partial. However, whether an award on a separable claim arises in the context of an award that purportedly, and incorrectly, attempts to dispose of the whole of the matter submitted to arbitration or in the context of a separate and interim award, the net result of confirmation is the same: one of the claims submitted to arbitration is resolved and reduced to judgment, while the others remain open and subject to further litigation, either before arbitrators or in a court. There is thus no reason to limit the reasoning of *Moyer* on the grounds suggested by Star Lines.

Star Lines' second argument is that the Court of Appeals' decision in *Moyer* to confirm the award is justified by the fact that the issue which had not been resolved by the arbitrator *had* been determined by the District Court; thus, if the arbitration award and the lower court determination were read together, the entirety of the controversy submitted to arbitration had been adjudicated by the time the case reached the appellate leed to judgment, while the otvel. There is, however, no indication in the opinion that the court considered this circumstance in making its decision; rather, the court relied exclusively on the fact that the claim that was determined by the arbitrator was separable from the claim that was not. While it may be that the result in *Moyer* could have been reached by the route suggested by Star Lines, the simple fact is that the result is based on the separability doctrine.

does not achieve this objective.[9] For these reasons, an award with a defect similar to that in the award in this case was held unconfirmable in *Herbst v. Hagenaers, supra.*[10]

 Because of the insufficiency of the portion of the award concerning the disputed part of the freight monies claim, the interim award fails to dispose of the claim it deals with. Although the award decides in PRMSA's favor on part of PRMSA's claim, it rules for neither party on the rest of the claim, aside from the mere determination of liability. An award that fails to lay any one issue to rest is contrary to the general principles of arbitration law, as discussed above, and is not "final" within the meaning of the federal Arbitration Act. *See, e. g., Herbst v. Hagenaers, supra. See also, Jones v. Welwood, supra,* 71 N.Y. at 216 (partial award vacated on grounds "that it does not dispose of any one controversy"); *cf. Cofinco, Inc. v. Bakrie & Bros., N. V., supra,* 395 F.Supp. at 616 (award disapproved because it directed the payment of an unspecified amount of "accrued expenses" and "interest"). Nor can it be persuasively argued that the two portions of the freight monies award or claim are "separable;" if a confirmable partial award could issue from arbitration solely because liability for a portion of a claim or for a part of the award was admitted or easy to determine, the separability exception would swallow the rule.

None of the cases relied on by PRMSA support the confirmation of the freight mo-

nies award, whatever they may have to say about the confirmability of other kinds of "interim" or "partial" awards. In *Moyer v. Van-Dye-Way Corp., supra,* note 8, the court confirmed an award that disposed of only one of two claims submitted to arbitration, but what was at issue there were two entirely distinct claims—one for wage payments and one concerning disbursements from an employee welfare fund. As the court noted, the award being confirmed was on a claim which stood "as a separate item." *Ibid.* In the present case, the attempted distinction is between the decided and undecided portions of the same claim—the same "item."

In *Island Territory of Curacao v. Solitron Devices, Inc.,* 356 F.Supp. 1 (S.D.N.Y.) (Wyatt, J.), *aff'd,* 489 F.2d 1313 (2d Cir. 1973), *cert. denied,* 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974), a complex commercial dispute was committed to arbitration. By an award dated August 13, 1970, the arbitrators ruled on and resolved all the claims put before them. In the calculation of damages, the arbitrators limited their concern to the period ending December 31, 1973, on the grounds that the existence and extent of damages after that date was speculative and uncalculable at the time of the award. However, the award went on to provide that "around" December 31, 1973, the parties could resubmit to arbitration the question of post-1973 damages. In a sense, then, the arbitrators did not resolve the entirety of the dispute submitted to them. Nonetheless, the court ruled that the award was "final" and "definite" within the mean-

---

**9.** As noted above, in response to PRMSA's claim for $550,000 in freight monies, Star Lines admitted that it had collected $180,000 in freight monies and that those monies were due to PRMSA. Star Lines thus admits its liability for any freight monies it has collected, but contests the amount of money PRMSA alleges Star Lines has collected. It is worth noting that, other than the directive that Star Lines pay over a disputed sum of money immediately, the portion of the award under discussion contains nothing which contributes to the resolution of what is disputed by the parties on this

claim. *See Wolff & Munier, Inc. v. Diesel Construction Co., supra.*

**10.** In *Herbst,* two partners, upon dissolution of their partnership, submitted the resolution of their respective rights and interests in the partnership to arbitration. Part of the award concerned the payment of money: the arbitrators ordered one partner to pay the other a specific sum of money, and in addition, whatever sum was due to that partner on the books of the partnership as of a certain date.

ing of 9 U.S.C. § 10(d). But whatever may be the proper rule in situations where there are claims of injury that stretch far into the future which cannot even be roughly calculated in the present, the *Curacao* case is inapposite here. The issue left undecided by the award in this case did not relate to injury that has not yet been suffered; the entire claim at issue concerns freight monies allegedly collected under an agency agreement that terminated in early 1977. Nor is the amount of money to which PRMSA is entitled presently speculative or uncalculable; indeed, the computations can be made from records in the possession of the parties. The unresolved issue in this case is a garden-variety-type arbitration claim to which the reasoning of *Curacao* does not apply.

*Sportswear, Ski-suits & Waterproof Garment Workers' Union, Local 246 v. Evans Manufacturing Co.*, 206 F.Supp. 572 (E.D. Pa.1962), *aff'd*, 318 F.2d 528 (3d Cir. 1963), is also readily distinguishable. The dispute there concerned an employer's alleged breach of a collective bargaining agreement; the relief requested by the union was an opportunity to examine the employer's wage records, damages, and an injunction directed at the employer's complained-of conduct. The arbitrator found that the employer had breached its agreement, and, as a step preliminary to the determination of whether monetary and injunctive relief should issue, directed that the union be permitted to examine the employer's records. The District Court confirmed the award; the Court of Appeals, specifically noting that the award was only a preliminary to the granting of substantive relief, affirmed. The action ordered by the arbitrator in *Sportswear* was indispensable in that case to his ultimate determination of what substantive relief should be granted, and of necessity, the authority of a court must be available to enforce an arbitrator's

decision that an inspection of records or an accounting is necessary in advance and in aid of his final ruling on the merits. But that form of interim or preliminary award bears no relationship to the kind of award issued in this case—a partial ruling on the merits itself of a single claim.

The *Sportswear* case does, however, support the propriety of the third element of the instant award—the direction of an accounting with regard to freight monies. Recognizing the force of *Sportswear* in this regard, Star Lines appears to concede that the accounting order can be confirmed. It contends, though, that the parties have already performed "the functional equivalent" of the accounting. PRMSA, however, is entitled to the full benefit of an actual accounting as ordered, and to the extent that an accounting has not already occurred, Star Lines must comply with the arbitrators' order.

In sum, insofar as the award orders Star Lines to pay PRMSA money, it is vacated.[11] The direction that Star Lines make an accounting with regard to freight monies is confirmed.

IT IS SO ORDERED.

---

11. For the sake of absolute clarity, I emphasize that this opinion does not in any way preclude the enforcement of any decision the arbitrators may make with regard to the freight money claim when that decision is embodied in an award that disposes of all the disputes between the parties, or even in an award that completely resolves the freight monies claim.