# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 23
American International Specialty Lines
Insurance Company,
  Respondent,
   v.
Allied Capital Corporation, et al.,
  Appellants.

Brian A. Sutherland, for appellants.
Caitlin J. Halligan, for respondent.

STEIN, J.:

This appeal requires us to determine whether an arbitration panel exceeded its authority by reconsidering an initial determination—denominated a "Partial Final Award"—that addressed some, but not all, of the issues submitted for arbitration.

Inasmuch as the record is devoid of any evidence that the parties to the arbitration mutually agreed to the issuance of a partial decision that would have the effect of a final award, we hold that the arbitration panel acted within the bounds of its broad authority by reconsidering the Partial Final Award.

I.

Ciena Capital LLC and Allied Capital Corporation reached a settlement with the federal government resolving a federal qui tam action involving allegations of their participation in loan origination fraud. As part of the settlement, Ciena agreed to pay the federal government $10.1 million and Allied Capital—which owned 94.9% of the voting stock of Ciena—agreed to release a portion of its secured interest in Ciena, which was then facing bankruptcy, in order to facilitate Ciena's payment of the settlement.

Ciena and Allied Capital (hereinafter collectively referred to as the insureds) sought payment of their defense costs for the federal action and indemnification for the resultant settlement under two insurance policies issued by petitioner American International Specialty Lines Insurance Company (hereinafter AISLIC). After AISLIC denied coverage, the insureds demanded arbitration under the broadly worded arbitration clauses contained in the policies. As relevant here, the insureds sought damages for AISLIC's alleged breach of the insurance policies by refusing to defend the insureds in the federal action and indemnify them for the $10.1 million settlement. In response, AISLIC asserted, among other things, that the settlement was not a "loss" within the meaning of the insurance policies, and that the insureds could not prove their entitlement to the defense costs claimed

because the relevant invoices showed that the alleged costs arose, in part, from unrelated legal work that was not covered by the policies.

Eventually, the insureds and AISLIC moved for summary disposition of the arbitration proceeding. In their submissions to the arbitration panel,[1] the insureds noted that the precise amount of defense costs to which they were entitled could be the subject of a separate evidentiary hearing before the panel if it determined that AISLIC was liable for such costs. At oral argument on the parties' applications for summary disposition, one of the arbitrators inquired whether "a partial summary disposition is in the cards," and the insureds' counsel replied that such a procedure would "make[] the most sense." However, AISLIC's counsel never directly commented on whether AISLIC would agree to a partial summary disposition, and the arbitration panel never stated on the record that it would issue such a partial determination. Moreover, there was no discussion regarding whether any such "partial summary disposition" would be a "final" award deciding some, but not all, of the issues submitted to the panel.

Nevertheless, the arbitration panel, with one arbitrator dissenting, subsequently issued what it denominated a "Partial Final Award," determining that only one insurance policy was applicable, under which only Allied Capital was an insured, and that the federal settlement did not constitute a covered loss under this insurance policy.[2] Consequently,

---

[1] The panel consisted of three arbitrators, with one serving as the chair.
[2] The arbitration panel rejected AISLIC's argument that the claim arising out of the federal settlement related back to an earlier policy, also issued by AISLIC, under which both Allied Capital and Ciena were insureds.

the panel concluded that Allied Capital was not entitled to indemnification.[3] However, the arbitration panel determined that Allied Capital was entitled to defense costs and, because there was a factual dispute regarding the amount of legal expenses incurred during the federal action, the question of damages would be resolved after a separate evidentiary hearing before the panel.

Before an evidentiary hearing was held, the insureds sought reconsideration of the Partial Final Award, arguing that the panel had erred by concluding that the settlement did not constitute a covered loss. AISLIC opposed the reconsideration application both on procedural grounds—namely, that the arbitrators were without authority to reconsider the Partial Final Award under the doctrine of functus officio—and on the merits, arguing that the arbitrators correctly decided the indemnification issue.[4]

The arbitration panel, again with one member dissenting, changed course and concluded in a "Corrected Partial Final Award" that, upon reconsideration, the settlement did constitute a covered loss under the applicable insurance policy. As pertinent here, a majority of the panel rejected AISLIC's argument that the functus officio doctrine precluded reconsideration.[5] Thereafter, the arbitration panel conducted an evidentiary

---

[3] The dissenting member of the arbitration panel concluded that Allied Capital was at least entitled to a full evidentiary hearing regarding whether the settlement constituted a loss under the relevant policy.

[4] AISLIC also claimed that the JAMS institutional procedural rules applied and precluded reconsideration. The arbitration panel rejected this argument, concluding that the parties never agreed to be bound by such rules. The propriety of that determination is not before us on this appeal.

[5] The dissenting member of the panel would have determined that the arbitration panel was precluded from reconsidering the Partial Final Award by the doctrine of functus officio

hearing to determine the amount of Allied Capital's covered defense costs, and ultimately issued a "Final Award," granting Allied Capital recovery against AISLIC for damages consisting of both the settlement and defense costs, less offsets for insurance proceeds paid to Ciena under insurance policies not otherwise at issue in this arbitration.

AISLIC commenced this proceeding seeking vacatur of the Corrected Partial Final Award and the Final Award, and reinstatement and confirmation of the original Partial Final Award, reiterating its argument that the doctrine of functus officio precluded the arbitration panel from reconsidering the Partial Final Award. Supreme Court, among other things, denied the petition and confirmed the Final Award.

Upon AISLIC's appeal, the Appellate Division, with one Justice dissenting, reversed Supreme Court's order and judgment, granted AISLIC's petition, vacated the Corrected Partial Final Award and Final Award, and confirmed the Partial Final Award (167 AD3d 142, 149-150 [1st Dept 2018]). The majority concluded that, "during the arbitration proceedings, the parties agreed to an immediate determination solely as to liability, which they expected would be final," and "nothing in the record . . . suggest[ed] that the parties or the panel believed that the [Partial Final Award] would be anything less than a final determination" (id. at 149). Therefore, the Court held that, "under the functus officio doctrine, it [was] improper and in excess of the panel's authority" to reconsider the Partial Final Award (id.).

---

and, in any event, that the Partial Final Award correctly determined that Allied Capital was not entitled to indemnification.

The Appellate Division granted the insureds leave to appeal to this Court and certified the question of whether its order was properly made. We now reverse and answer the certified question in the negative.

II.

We begin our analysis by recognizing "New York's 'long and strong public policy favoring arbitration'" (Stark v Molod Spitz DeSantis & Stark, P.C., 9 NY3d 59, 66 [2007], quoting Matter of Smith Barney Shearson v Sacharow, 91 NY2d 39, 49 [1997]; see Matter of Weinrott [Carp], 32 NY2d 190, 199 [1973]). Arbitration serves the laudable objective of "conserving the time and resources of the courts and the contracting parties" (Matter of Nationwide Gen. Ins. Co. v Investors Ins. Co. of Am., 37 NY2d 91, 95 [1975]; see Stark, 9 NY3d at 66; Mobil Oil Indonesia v Asamera Oil [Indonesia], 43 NY2d 276, 281-282 [1977]). Arbitrators routinely use their expertise to orchestrate expeditious resolutions to complex legal problems in commercial disputes, as well as in other areas of the law (see Matter of Goldfinger v Lisker, 68 NY2d 225, 230-231 [1986]). With these principles in mind, we have steadfastly discouraged courts from becoming unnecessarily entangled in arbitrations or from serving "'as a vehicle to protract litigation'" (Nationwide Gen. Ins. Co., 37 NY2d at 95, quoting Weinrott, 32 NY2d at 199; see Smith Barney Shearson, 91 NY2d at 49-50; Goldfinger, 68 NY2d at 231; Matter of Sprinzen [Nomberg], 46 NY2d 623, 629 [1979]).

Similarly, CPLR article 75 codifies a limited role for the judiciary in arbitration. In that regard, an application to vacate an arbitration award may be granted in narrow circumstances, including where "an arbitrator . . . exceeded his [or her] power" (CPLR

7511 [b] [1] [iii]).  We have repeatedly explained that arbitrators exceed their power within the meaning of the CPLR only when they issue an award that "'violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power'" (Matter of Kowaleski [New York State Dept. of Correctional Servs.], 16 NY3d 85, 90-91 [2010], quoting Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO, 6 NY3d 332, 336 [2005]; see Matter of Falzone [New York Cent. Mut. Fire Ins. Co.], 15 NY3d 530, 534 [2010]; Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 326 [1999]; Matter of Silverman [Benmor Coats], 61 NY2d 299, 308 [1984]).

In this case, AISLIC argues, and the Appellate Division held, that the arbitration panel exceeded its authority because it violated the common law doctrine of functus officio (167 AD3d at 148-149).  Functus officio, Latin for "having performed [one's] office" (Black's Law Dictionary [11th ed 2019], functus officio), has operated historically as a restriction on the authority of arbitrators, precluding them from taking additional actions after issuing a final award.  As this Court stated well over one hundred years ago,

> "[a]s soon as [the arbitrators] have made and delivered their award, they become functus officio, and their power is at an end.  After having once fully exercised their judgment upon the facts submitted to them and reached a conclusion which they have incorporated into their award, they are not at liberty at another and subsequent time to exercise a fresh judgment on the case and alter their award"

(Flannery v Sahagian, 134 NY 85, 87-88 [1892] [emphasis omitted]).  In other words, under the common law rule, arbitrators relinquish all powers over the parties to the arbitration upon issuance of a final award and, therefore, are precluded from modifying or

reconsidering that award (see Herbst v Hagenaers, 137 NY 290, 294 [1893]; see also CPLR 7509 [permitting modification of an arbitration award in only limited, enumerated circumstances]; Sixth Report to the Legislature by the Senate Finance Committee relative to the Revision of the Civil Practice Act, 1962 Legis. Doc. No. 8, Bill Jacket, L 1962, ch 308 at 637 [CPLR 7509 "permits the arbitrators to correct formal errors or clarify their intent but not to re-examine the grounds of the award or alter the decision"]).

On this appeal, the insureds argue that the functus officio rule is no longer valid under New York law inasmuch as that doctrine was grounded upon anti-arbitrational sentiments rejected long ago by our state courts and by Congress in the Federal Arbitration Act. We need not address this argument, however, inasmuch as functus officio would apply only to final awards (see Flannery, 134 NY at 87-88) and, despite its name, the Partial Final Award was not, in fact, final.

This Court has long recognized that final awards are those that are coextensive with the issues submitted to the arbitrators by the parties (see Jones v Welwood, 71 NY 208, 212 [1877]). In Mobil Oil Indonesia v Asamera Oil (Indonesia), we explained that judicial review of arbitration awards is typically limited to "final determination[s] upon the matters submitted" to the arbitrators, with specifically enumerated exceptions in CPLR article 75 that are not relevant here (43 NY2d at 281, citing Jones, 71 NY at 212; see CPLR 7503 [b]). Consequently, in Mobil Oil, we determined that a party may not commence a proceeding to vacate the arbitrators' interlocutory order that decided only a "very limited procedural question" (43 NY2d at 281). Reiterating this State's general policy favoring arbitration, we observed that, "for the court[s] to entertain review of intermediary

arbitration decisions involving procedure or any other interlocutory matter, would disjoint and unduly delay the proceedings, thereby thwarting the very purpose of conservation" (id. at 282). We further underscored that both Article 75, itself, and policy considerations "dictate that the courts refrain from entertaining such interlocutory determinations made by arbitrators" (id.). Thus, under our case law, a final arbitration award is generally one that resolves the entire arbitration.

Relying on federal case law that has recognized certain circumstances in which partial arbitration determinations may be considered final awards, AISLIC argues that the parties here agreed to bifurcate the arbitration, as well as to the issuance of a partial and final award. Federal courts have consistently recognized that partial determinations may be treated as final awards where the parties expressly agree both that certain issues submitted to the arbitrators should be decided in separate partial awards and that such awards will be considered to be final (see e.g. Hart Surgical, Inc. v Ultracision, Inc., 244 F3d 231, 235 [1st Cir 2001]; Trade & Transport Inc. v Natural Petroleum Charterers Inc., 931 F2d 191, 195 [2d Cir 1991]). Most notably, in Trade & Transport Inc. v Natural Petroleum Charterers Inc., the Second Circuit held that—where both parties expressly asked the arbitration panel to issue a partial award regarding liability for one aspect of the dispute in order to obtain "a decision that was expressly intended to have immediate collateral effects in a judicial proceeding," and neither party objected when the arbitrators informed them that they would render a partial final award as a result of the bifurcation— the arbitrators were without authority to reconsider the resulting partial final award (931 F2d at 192-193, 195). The Second Circuit concluded that, under those circumstances, it

was unnecessary that every issue submitted to the arbitrators be conclusively decided in a single final award because "the submission by the parties determines the scope of the arbitrators' authority" and, "if the parties agree that the panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so" (id. at 195).

This Court has not had occasion to determine whether or under what circumstances parties may agree to the issuance of a final award that disposes of some, but not all, of the issues submitted to the arbitrators; nor must we resolve that question in this case. Even assuming that parties to an arbitration may agree to the issuance of a partial determination that constitutes a final award, the parties here, as the arbitration panel below concluded, did not reach any such agreement. Although the insureds' counsel suggested a separate proceeding to determine the amount of Allied Capital's defense costs in the event the panel determined such costs were recoverable, AISLIC never consented to bifurcate the proceeding—remarking at one point that, in its view, "there [was] nothing left on [the defense costs] issue to talk about"—or agreed that any resulting partial decision would be treated as a final award. Notably, neither the parties nor the arbitrators ever discussed or otherwise demonstrated any mutual understanding regarding whether the proposed severance of the calculation of defense costs would result in a final partial award. This case is therefore distinguishable from Trade & Transport, in which the parties specifically agreed to bifurcate the arbitration for the very purpose of obtaining a "decision that was expressly intended to have immediate collateral effects in a judicial proceeding" (931 F2d at 195). Absent an express, mutual agreement between the parties to the issuance of a

partial and final award, the functus officio doctrine would have no application in this case.[6]

Under these circumstances, we reject AISLIC's argument that the arbitration panel exceeded its authority by reconsidering the Partial Final Award.[7]

Accordingly, the order of the Appellate Division should be reversed, with costs, so much of the order and judgment of Supreme Court as (1) denied the motion to vacate the August 2016 Corrected Partial Final Award and the April 2017 Final Award and (2) confirmed the April 2017 Final Award reinstated, and the certified question answered in the negative.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order reversed, with costs, so much of the order and judgment of Supreme Court, New York County, as (1) denied the motion to vacate the August 2016 "corrected partial final arbitration award" and the April 2017 final arbitration award, and (2) confirmed the April 2017 final arbitration award reinstated, and certified question answered in the negative. Opinion by Judge Stein. Chief Judge DiFiore and Judges Rivera, Fahey, Garcia, Wilson and Feinman concur.

Decided April 30, 2020

---

[6] The parties do not ask us to, and so we do not, address here the effect of CPLR article 75 on the common law functus officio doctrine.

[7] To the extent that AISLIC raises a federal preemption argument, such contention is unpreserved for our review.