KURT ORBAN CO., Petitioner-Appellee,

v.

ANGELES METAL SYSTEMS and
Newman Iron & Metal Co., as
co-venturers, Respondents,

Newman Iron & Metal Co.,
Respondent-Appellant.

No. 397, Docket 77-7313.

United States Court of Appeals,
Second Circuit.

Argued Dec. 16, 1977.

Decided March 27, 1978.

John S. Kinzey, New York City (LeBoeuf,
Lamb, Leiby & MacRae, James A. Fitzpa-
trick, New York City, of counsel), for re-
spondent-appellant.

Jack Weinberg, New York City (Grau-
bard Moskovitz McGoldrick Dannett & Ho-
rowitz, Michael H. Greenberg and Steven J.
Brill, New York City, of counsel), for peti-
tioner-appellee.

Before OAKES and VAN GRAAFEI-
LAND, Circuit Judges, and BARTELS,*
District Judge.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a judgment of the
United States District Court for the South-
ern District of New York confirming an
arbitration award against appellant New-
man Iron & Metal Co.  We affirm.

A somewhat complicated series of events
preceded the award, but a brief summary
will suffice for purposes of this opinion.
Appellant Newman is a California corpora-
tion which operates as a trader in steel.
Appellee Kurt Orban Company is a New
York corporation engaged in the importa-
tion of steel and other products.  Respon-

---

* Honorable John R. Bartels, Senior District
Judge of the United States District Court for
the Eastern District of New York, sitting by
designation.

dent Angeles Metal Systems is the trade name of Angeles Metal Trim Co., a California corporation which is a fabricator of steel products.

In May 1974, Newman orally agreed to purchase two thousand tons of Korean steel from Orban, following which it negotiated with Angeles for the resale to it of one thousand tons. Because Newman's credit rating was poor, Angeles agreed to secure a letter of credit to cover the entire purchase. As part of the deal, title to the steel was to vest in Angeles. However, the original written purchase order and agreement which contained the arbitration clause was executed by Newman rather than Angeles. In the letter returning this contract to Orban, Newman simply directed that title to the steel when shipped vest in Angeles. Although Orban thereafter secured a written purchase order from Angeles covering the same steel, Newman never requested that it be released from its contractual commitment. Its representative testified at the arbitration hearing that he executed the contract in Newman's name because he "wanted to retain a hold on the material."

Following the execution of the above-described agreement, Newman, acting for itself and Angeles, negotiated a deal with the Jones & Laughlin Steel Corporation for the sale to it of the entire two thousand tons. This required that the steel be shipped to Camden, New Jersey instead of Los Angeles, its original destination. While the steel was on route to Camden, Jones & Laughlin canceled its order; and the letter of credit expired. Newman and Angeles then proceeded to play Alphonse and Gaston in accepting responsibility for payment of the purchase price. As a result, Orban was required to dispose of the steel at a substantial loss.

■ Orban then demanded arbitration against both Newman and Angeles as "co-venturers". Settlement with Angeles was thereafter agreed upon, and the arbitration proceeded against Newman alone. Newman now contends that, because the demand was against both Newman and Angeles as co-venturers, the arbitrators exceeded their authority in making an award solely against it. This argument is without merit.

■ Arbitrators are not required to disclose the basis upon which their awards are made, *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214–16 (2d Cir. 1972), and they did not do so in this case. In the absence of any indication that the award was made in "manifest disregard" of the law, *Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), courts will not look beyond the lump sum award in an attempt to analyze the reasoning processes of the arbitrators, *Ballantine Books, Inc. v. Capital Distributing Co.*, 302 F.2d 17, 21–22 (2d Cir. 1962). "If a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed." *Sobel*, 469 F.2d at 1216.

■ The claim for relief in Orban's demand for arbitration asked for a declaration of its rights and an award of damages arising out of its contract with Newman, and Orban's counsel made it clear at the outset of the arbitration proceedings that Orban's claim did not depend upon the existence of a joint venture. The arbitrators may have believed that there was no joint venture and found appellant liable as principal. The fact that the demand named appellant and Angeles "co-venturers" would not bar the arbitrators from reaching such conclusion. Any doubts about the scope of the submission agreement should be resolved in favor of coverage. *Federal Commerce & Navigation Co. v. Kanematsu-Gosho, Ltd.*, 457 F.2d 387, 390 (2d Cir. 1972). The language of arbitration demands should not be subjected to the same strict standards of construction that would be applied in formal court proceedings. *Keystone Printed Specialties Co. v. Scranton Printing Pressmen and Assistants Union No. 119*, 386 F.Supp. 416, 422 (M.D.Pa.1974), aff'd., 517 F.2d 1398 (3d Cir. 1975); *American Bosch Arma Corp. v. International Union of Electrical, Radio and Machine Workers, AFL–CIO, Local 794*, 243 F.Supp. 493, 494 (N.D.Miss.1965). The arbitration proceeded without objection by appellant, the corporation against whom the demand was

made, and appellant must now be deemed to have acquiesced in the form of the submission. *See United Buying Service International Corp. v. United Buying Service of Northeastern New York, Inc.,* 38 A.D.2d 75, 79–80, 327 N.Y.S.2d 7 (N.Y.Sup.Ct.1971), *aff'd.,* 30 N.Y.2d 822, 344 N.Y.S.2d 911, 286 N.E.2d 284 (1972). The award should not now be overturned because of the possibility that the demand for arbitration incorrectly described appellant's legal status. *See Philippine Bulk Shipping Inc. v. International Minerals & Chemical Corp.,* 376 F.Supp. 654, 656 (S.D.N.Y.1973).

■ Newman's second claim of error arises out of the settlement between Orban and Angeles. Orban settled its claim against Angeles for $225,000 under an agreement by which it reserved all of its rights to proceed against Newman. It agreed further to share with Angeles fifty per cent of any monies recovered from Newman after first deducting its legal fees and other litigation expenses. Orban's figures, which we need not review here, indicate that after the payment of its fees and expenses and the reimbursement of Newman, its net recovery will approximate its actual loss.

Newman now contends that in making an award to Orban, fifty per cent of which was to be paid over to Angeles, the arbitrators were in reality enforcing a claim of Angeles. However, Angeles made no claim whatever against Newman in the arbitration proceedings, and no rights as between them were determined by the arbitrators.[1] Newman's contention that the arbitrators lacked power to determine the claims of Angeles, while a correct statement of the law, *Orion Shipping and Trading Co. v. Eastern Petroleum Corp. of Panama,* 312 F.2d 299, 300 (2d Cir.), *cert. denied,* 373 U.S. 949, 88 S.Ct. 1679, 10 L.Ed.2d 705 (1963), is therefore inapplicable to the facts of this case.

The judgment appealed from is affirmed with costs. Orban's request for double costs and attorneys' fees is denied.

---

1. Angeles and Newman are litigating their differences in the California courts.