**AMOCO OVERSEAS OIL COMPANY
and Amoco Transport
Company, Plaintiffs,**

v.

**ASTIR NAVIGATION COMPANY,
LTD., Defendant.**

**No. 77 Civ. 1035 (WCC).**

United States District Court,
S. D. New York.

Dec. 19, 1979.

---

Walker & Corsa, New York City, for plaintiffs; Joseph T. Stearns, New York City, of counsel.

Healy & Baillie, New York City, for defendant; Raymond A. Connell, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Plaintiffs Amoco Overseas Oil Company and Amoco Transport Company ("Amoco" or "Charterer") move to vacate an arbitration award pursuant to 9 U.S.C. §§ 4 and 10. Defendant Astir Navigation Company, Ltd. ("Astir" or "Owner"), owner of the M/T ANSON ("ANSON") cross-moves to confirm the award under 9 U.S.C. § 207. For reasons stated below, the Court confirms the award of the arbitration panel.

*Background*

This action arises out of a charter party dated January 28, 1977 between Amoco and Astir under which Astir was to deliver a cargo of Amoco crude oil from Trinidad to Texas City, Texas. On arrival at Texas City, Astir's vessel, the ANSON, was denied permission to enter the port by the United States Coast Guard after the ship was found to be in violation of several applicable pollution regulations; defendant was thus unable to deliver the cargo to the agreed destination. At that point, defendant entered into discussions with the plaintiffs concerning an alternative disposition of the cargo, and plaintiffs directed that the ANSON proceed to South Riding Point, Grand Bahama Island, so that the cargo could be transferred to another vessel chartered by Amoco to carry the cargo to Texas City. Defendant's vessel proceeded to South Riding Point, but defendant demanded that Amoco pay the full freight for a voyage from Trinidad to Texas City before defendant would unload the cargo at South Riding Point for transshipment to plaintiffs' alternative vessel. Plaintiffs agreed to pay this sum without waiving their right to litigate whether defendant had any right to payment of this "freight" under the charter party.

The cargo was transferred to the alternative vessel on the same day plaintiffs tendered their check for the "freight" money; plaintiffs immediately attached the tendered check pursuant to an *ex parte* order issued by this Court. Defendant promptly moved to vacate the attachment. On March 15, 1977, at the request of the parties, the action was transferred to the Court's suspense docket pending submission of the underlying dispute to arbitration in accordance with the terms of the charter party. Pursuant to a subsequent agreement between the parties, the attached funds were placed in an escrow account pending arbitration.

The arbitration panel handed down a decision on September 14, 1979, awarding defendant the sum of $29,990.95 after finding that (1) owner Astir had breached its charter party obligations, and was liable "for those monetary damages incurred by charterer"; (2) owner did not, however, abandon the voyage, so that owner was entitled to a pro-rata portion of the freight based on the benefit conferred on charterer as a result of the delivery which Astir actually made (which sum exceeded the damages

that Astir owed to Amoco as a result of the breach); and (3) owner acted improperly in demanding payment of full freight as a precondition for unloading the cargo, so that charterer's attachment of the tendered "freight" money was proper, and that as a result of this incident, charterer would be awarded "an allowance of $3,000 toward counsel fees incurred in the attachment proceeding" as part of its overall damages. Arbitrators' opinion at 13–14.

*Contentions of the Parties*

Plaintiffs contend that the arbitrators either failed to decide or failed to indicate in their opinion whether or not they had decided an issue submitted for the panel's consideration, namely, plaintiffs' claim for interest on the attached funds as damages for defendant's alleged conversion of plaintiffs' cargo. Plaintiffs therefore contend that the award is not "final" and that the case must be remanded to the panel so that the arbitrators can either consider the issue or indicate that the claim was considered and rejected by the panel in its decision. Defendant argues that a party opposing confirmation of an arbitration award is limited in its opposition to the narrow grounds listed under 9 U.S.C. § 207 and Article V of the Convention on Foreign Arbitral Awards ("Convention") or, alternatively, under 9 U.S.C. § 10 of the Federal Arbitration Act ("Act"); that under the decisions interpreting those sections, a court must confirm even a "clearly erroneous" decision by the arbitrators, and arbitrators are not required to specify the grounds for rejection of any particular claim as long as the damages they award can be computed with certainty; and that, finally, the arbitrators' opinion in this case did in fact consider the

conversion theory raised by plaintiffs, rejected this theory by implication, and expressly rejected Amoco's claim for interest on the attached sum as an element of Amoco's demand for restitution of the entire amount attached plus interest as damages for breach of the charter party.

*Analysis*

1. Applicable law

■ As a preliminary matter, the Court notes that it is unclear whether this case properly falls under the Federal Arbitration Act, 9 U.S.C. §§ 1–14, or under the Convention, implemented at 9 U.S.C. §§ 201–208. It is clear that the case meets the jurisdictional requirements of the Act, since it involves a maritime contract and since the charter party contains an arbitration clause providing for arbitration in New York, with awards to be confirmable by a court with maritime jurisdiction in New York; therefore, defendant has made the showing required under 9 U.S.C. § 9 for an application for an order confirming the arbitration award, and plaintiffs would have to meet the standards laid down in 9 U.S.C. § 10 in order to vacate the award. Defendant contends that pursuant to 9 U.S.C. § 202 [1], the award is governed by the Convention rather than the Act, since the underlying relationship between the parties is commercial and since one of the parties is a foreign corporation. See *Antco Shipping Co. v. Siderman S.p.A.*, 417 F.Supp. 207 (S.D.N.Y.1976), *aff'd* in open court, 553 F.2d 94 (2d Cir. 1977) (holding Convention applicable in pre-arbitration dispute between two foreign corporations where the arbitration was to take place in New York). The Second Circuit has more recently noted, however, that the

---

1. Section 202 reads:

"*Agreement or award falling under the Convention*

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citi-

zens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States."

text of the Convention itself [2] could also be interpreted to indicate that awards rendered within the territory of the country where enforcement is sought do not fall under the Convention, *Andros Compania Maritima v. Marc Rich & Co., A. G.*, 579 F.2d 691, 699 at n. 11 (2d Cir. 1978) (noting also that the *Antco* affirmance was without precedential value), but the court declined to rule on this controversy in *Andros*. *Id.* As in *Andros, supra,* the dispute need not be resolved here, since the standards for confirming the award under 9 U.S.C. § 207 and the standards for vacating the award under Article V of the Convention are equivalent in this case to the corresponding standards under §§ 9 and 10 of the Act. See *Andros, supra,* at 579 F.2d at 699, n. 11 ("Certainly the Convention is no more liberal than 9 U.S.C. § 10 on the manner of vacating awards"); *Molino Fratelli Pardini, S.p.A. v. Louis Dreyfus Corporation,* No. 78–3549 (Conner, J.) (slip op., May 16, 1979) at 7–8.

## 2. The Arbitration Award

■ Next, it should be noted that, contrary to plaintiffs' position, it appears from the arbitrators' opinion that the panel did in fact both consider and reject plaintiffs' claim for damages for defendant's alleged conversion of plaintiffs' cargo. The arbitrators' opinion notes at page 7 that a claim for conversion damages was included among plaintiffs' contentions. The opinion further notes, however, that defendant asserted that its demand for full freight payment was made in the belief that surrender of the cargo without receipt of freight payment would cause defendant to lose the lien for freight which defendant believed it pos-

sessed on the cargo; that defendant did turn the cargo over to plaintiffs when the freight payment was tendered; that the panel questioned "whether the manner in which [the attachment of freight funds] was effected permits us to conclude that the funds ever came into Owner's possession and, therefore, ever constituted payment to Owner," Arbitrators' opinion at 12; and that the incident occurred in the context of Charterer's assumption of what should properly have been Owner's obligation to transship the cargo without giving Owner an opportunity to arrange for such transshipment, *id.* In this context, the opinion then holds that, while owner's refusal to discharge the cargo without payment of full freight was improper and in violation of defendant's obligations under the charter party, such conduct was neither "an abandonment of the vessel or so unconscionable a course of conduct as to preclude [defendant] from entitlement to an equitable remedy and a pro-rata portion of the freight," *id.* at 11, and awards plaintiffs $3,000 damages for counsel fees incurred in the attachment proceeding as one item in plaintiffs' overall damages. *Id.* at 13–14. The opinion thus treats the refusal to deliver the cargo as a violation of the charter party, entitling plaintiffs to attorneys' fees as part of plaintiffs' overall damages under the charter party,[3] but does not adopt plaintiffs' conclusion that this refusal amounted to conversion of the cargo. The panel also rejected plaintiffs' claim for interest on the attached funds as part of plaintiffs' damages for breach of the charter party, *id.* at 13.[4]

**2.** Article I, paragraph 1 of the Convention states that

"1. This Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought."

**3.** In the early papers before the arbitration panel, plaintiffs listed interest on the attached

funds as one of the items of damage flowing from defendant's alleged breach of the charter party. In plaintiffs' final brief, however, plaintiffs asserted that their claim for interest on the attached funds was an item of damages "resulting from owner's admitted conversion of the cargo, not from charter breach." Plaintiffs' final post-hearing brief at 47.

**4.** At arbitration, plaintiffs suggested that the panel compute their damages for breach of the charter party in two alternative ways: on an item-by-item basis; or, if the total damages to be awarded on an item-by-item basis fell below the amount of the attached funds, by awarding

### 3. The Merits

 Finally, it is clear that even if, as plaintiffs contend, the arbitrators had failed to consider plaintiffs' conversion theory as a basis for damages, or to indicate in their opinion that they had considered such a theory, such failure would not be sufficient as a matter of law to support vacatur of the award and a remand to the panel. The Court's power to review the award made by the panel is severely limited under either the Act or the Convention, see *Molino, supra*, slip op. at 8: the Court must confirm the award unless the party opposing the award shows that one of the grounds specified under § 10 of the Act for vacating the award (or under the substantially equivalent standards of Article V of the Convention) is present. *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 430 (2d Cir. 1974); *Molino, supra; In re Arbitration between Puerto Rico Maritime Shipping Authority v. Star Lines, Ltd.*, 454 F.Supp. 368, 373 (S.D.N.Y.1978).

 Plaintiffs' allegations here—basically, that the arbitrators either misinterpreted one of plaintiffs' legal arguments or failed to indicate their ruling on the argument—arguably fall under subsection (d) of § 10, which provides for vacating an award

> "[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

This subsection has been interpreted narrowly, see *Andros, supra*, 579 F.2d at 703, especially where the party seeking to vacate the award does so in the context of an issue "which all concede to have been properly submitted [to the panel] in the first in-

stance," *id.* An award may not be vacated under this subsection on the grounds that the arbitrators' opinion fails to interpret correctly the law applicable to the issues in dispute in the arbitration proceeding, *Maidman v. O'Brien*, 473 F.Supp. 25 (S.D.N.Y. 1979) or misinterprets the underlying contract, even if that misinterpretation is "clearly erroneous," *Andros, supra*, 579 F.2d at 703; *I/S Stavborg, supra*, 500 F.2d at 432; see *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1216 (2d Cir. 1972) (". . . if a ground for the arbitrators' decision can be inferred from the facts of the case, the award should be confirmed"); or fails to specify reasons for the panel's decision, or to state the panel's conclusions of law, *Andros, supra*, 579 F.2d at 704; see *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960): *Kurt Orban Co. v. Angeles Metal Systems*, 573 F.2d 739, 740 (2d Cir. 1978) (". . . courts will not look beyond the lump sum award in an attempt to analyze the reasoning processes of the arbitrators"). The award may be vacated, however, if the error by the arbitrators amounts to "irrationality," see *Kurt Orban, supra; Puerto Rico Maritime, supra*, 454 F.Supp. at 372 n. 5, or a "manifest disregard" of the applicable legal standard, *Andros, supra*, 579 F.2d at 704; *Puerto Rico Maritime, supra*, 454 F.Supp. at 372 n. 5, or if the award fails to dispose completely of a matter at issue between the parties, *Puerto Rico Maritime, supra* (decision awarding only partial damages, with remainder of damage claim still under arbitration, not confirmable).

In this case, as noted above, it does not appear that the panel mistakenly failed to

---

plaintiffs the attached funds plus interest ("restitution" method).

Plaintiffs concede that the arbitration panel specifically rejected plaintiffs' claim to interest on the attached funds under the "restitution" method of computing damages. Plaintiffs assert, however, that the panel

> "failed to distinguish between the claim of 'restitution plus interest' and the separate claim for damages for charter breach . . coupled with a claim [for] interest on the escrow account principal on the basis of the

separate . . . claim of conversion for refusing to release the cargo at Grand Bahama until 'freight' had been paid." Affidavit of Joseph T. Stearns, at 10,

although plaintiffs admit that

> ". . . argument can be made, principally from the fact that the award fails to include allowance for an item claimed, that the issue of interest on freight on the basis of conversion was considered and rejected by the panel." *Id.* at 11.

identify plaintiffs' claim for interest on the attached funds as an issue to be considered in the arbitration. The panel expressly noted that plaintiffs had made this claim and made express findings and an express award of attorneys' fees with regard to the incident underlying plaintiffs' claim of conversion. Nor does it appear that, even if the incident properly should have been considered sufficiently grave to constitute a conversion,[5] the panel's failure to so interpret defendant's actions would be so gross an error of law as to justify a finding of "manifest disregard" of the law or "irrationality." The panel found that the defendant instructed its vessel to proceed to the substitute port nominated by charterer one day after plaintiffs directed defendant to proceed there; that defendant turned over the cargo to plaintiffs three days after defendant's vessel arrived at South Riding Point; that while plaintiffs did agree, in accordance with defendant's demand, to pay full freight to defendant before defendant would unload the cargo, the attachment of the "freight" funds was "simultaneous" with their tender, so that the manner in which plaintiffs tendered payment in effect insured that defendant would not gain possession of the tendered funds; and that plaintiffs had threatened defendant's right to payment for the services defendant did actually render in bringing the cargo from Trinidad by arranging for a substitute vessel to take the crude to Texas City before allowing defendant any chance to arrange for its own substitute vessel and thus to complete performance under the charter party. In this context, the panel's failure to find that a conversion had occurred, or to award damages for the incident beyond plaintiffs' attorneys' fees in securing the attachment, is not only clearly rational, but, in this Court's opinion—recognizing that the Court's role is not to review the merits of the decision, but merely to review its rationality—strongly supported by the facts.

 Plaintiffs' further contention that the arbitrators' opinion should have clearly specified the panel's rejection of plaintiffs' conversion theory is clearly insupportable under the case law interpreting subsection 10(d), *Andros, supra*; see *Kurt Orban, supra*, and inconsistent with the policies underlying judicial review of arbitration awards. As the Supreme Court stated in *United Steelworkers, supra*,

> "A mere ambiguity in the opinion accompanying an award . . . is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the [arbitration] process . . . ." *Id.* 363 U.S. at 598, 80 S.Ct. at 1361.

Finally, the award sets forth definite amounts of damages owed to each party for both the conversion incident and the charter party breach; it is thus clearly "final" within the meaning of *Puerto Rico Maritime, supra*. Plaintiffs have therefore failed to state a ground for vacating the award under § 10 of the Act; under § 9 of the Act, the award must be confirmed.

For the reasons stated above, plaintiffs' motion to vacate is denied and the award of the panel is confirmed in full.

SO ORDERED.

---

**5.** The tort of conversion is generally defined as "those major interferences with the chattel, or with the plaintiff's rights in it, which are so serious, and so important, as to justify the forced judicial sale to the defendant which is the distinguishing feature of the action . . . In determining the seriousness of the interference, and the justice of requiring the defendant to pay the full value, all of the relevant factors are to be considered. These include the extent and duration of the defendant's exercise of control over the chattel; his intent to assert a right which is in fact inconsistent with the plaintiff's right of control; the defendant's good faith or bad intentions; the extent and duration of the resulting interference with the plaintiff's right of control; the harm done to the chattel; and the expense and inconvenience caused to plaintiff. W. L. Prosser, *Law of Torts*, § 15 at 80–81 (1964 ed.).