**BLOUSE, SKIRT & SPORTSWEAR WORKERS' UNION, LOCAL 23–25, I.L.G.W.U., Petitioner,**

v.

**SOUTH OCEAN SPORTSWEAR, INC., Respondent.**

No. 82 Civ. 651(MEL).

United States District Court,
S. D. New York.

April 30, 1982.

---

Chaikin & Chaikin, New York City, for petitioner; Stanley L. Goodman, New York City, of counsel.

Lerner, Walker, Levy & Cohen, New York City, for respondent.

LASKER, District Judge.

Blouse, Skirt & Sportswear Workers' Union, Local 23–25, I.L.G.W.U. ("the Union") moves for judgment pursuant to 9 U.S.C. Section 4 on its petition to confirm the award of Marshall L. Rosenberg, Impartial Chairman or Arbitrator, acknowledged January 19, 1982, directing South Ocean Sportswear, Inc. ("South Ocean") to pay the Union $4,175. for the benefit of Shiu Lun Lee ("Lee") as compensation for wages lost by reason of his discharge from South Ocean.

South Ocean discharged Lee on May 1, 1981, at which time the company and the Union were parties to a collective bargaining agreement providing for compulsory arbitration of disputes, including employee discharges. The claims arising from Lee's discharge were submitted to arbitration. A hearing was held, during which Lee, who speaks only Chinese, testified through an interpreter. On June 5, 1981, the arbitrator sustained South Ocean's action in discharging Lee.

Sometime later, it came to the Union's attention that the interpreter's translation may have been erroneous, and accordingly, the Union requested a hearing. The arbitrator determined:

"On the basis of a translation made from a tape recording of the initial hearing ... it appears clearly that the translator did not convey accurately and fully to the grievant the charges made against him by the Employer or the questions with respect to those charges being asked of him. Nor did the translator translate accurately grievant's replies ... [T]he inaccuracies were so severe and material that, ... I conclude there was a strong possibility that there had [sic] been a substantial failure of due process."

Opinion of Arbitrator, January 19, 1982 at 5.

Having determined that the translation deficiencies resulted in a denial of "substantial due process," *Id.* at 4, the arbitrator deemed his prior award to be a nullity and conducted a second hearing.

On January 19, 1982, the arbitrator rendered a decision concluding that Lee's discharge was unjustified and that South Ocean was liable for back pay in the amount of $4,175. Reinstatement was not ordered because South Ocean had ceased doing business in August, 1981. South Ocean moves to vacate and the Union moves to confirm the award.

South Ocean argues that the arbitrator had no power to reopen an award, even assuming, arguendo, that the Union is correct in contending that the translation at the original hearing was so defective as to constitute a violation of due process. From the axiomatic proposition that the arbitrator draws his powers from the contract that created them, South Ocean argues that where, as here, the contract does not provide a procedure for reopening a final award, the arbitrator's decision to do so is an act in excess of his powers. Moreover, South Ocean contends that the essence of the policy favoring arbitration is the finality of arbitration awards, and that to allow the arbitrator to reopen an award would conflict with that critical policy.

In the alternative, South Ocean insists that even if the arbitrator had the power to conduct a second hearing, he did not have power to impose an award of damages for a period subsequent to the first hearing. This contention is based on the assumption that the union was at fault for failing to provide its member with a competent translator. Had the first translator been competent, the argument runs, reinstatement would have been ordered at the time of the first award, June 5th, and instead of paying what is characterized as a punitive award of back pay, the company would have been paying wages in return for work performed by Lee for the post-June 5th period. In sum, South Ocean claims that the arbitrator had no power to require it to pay an award which, but for the carelessness of the Union, would not have been necessary.

The Union responds that the arbitrator's actions were well within the broad powers accorded him under the contract, and that the rehearing was mandated by the requisites of due process. Finally, the Union contends that it was not responsible for the difficulties of translation which occurred at the first hearing and that, in any event, the determination of who was to bear the responsibility for the events in question was for the arbitrator and that, under 9 U.S.C. § 10, his decision may not be set aside.

\* \* \*

■ 1. With respect to South Ocean's first contention, the extent of the arbitrator's powers is to be determined, in the first instance, by an examination of the contract from which they stem. The powers granted by the contract here are extensive, including the arbitrator's power to determine the arbitrability of matters put before him: i.e., to determine his own jurisdiction. Article 43, Section 1(f) of the Collective Agreement provides "If any issue should arise as to the . . . arbitrability . . . of any written complaint, the Impartial Chairman shall have the exclusive jurisdiction to determine such issue." (Collective Agreement, Exhibit A to Petition at 52).

When the Union returned to the arbitrator after the first award, the arbitrator determined that the dispute was still arbitrable. South Ocean was a party to an agreement which gave the arbitrator the power to make that determination. Having granted that power to the arbitrator, South Ocean may not now ask the Court to put aside the arbitrator's decision stemming from the grant.

Moreover, the arbitrator's order to reopen the proceedings was a procedural, not a substantive determination, and under *Rochester Telephone Corp. v. Communication Workers of America*, 340 F.2d 237 (2d Cir. 1965):

> " 'Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.' "

340 F.2d at 238, *quoting John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964) (whether a timely demand for arbitration had been

made was a procedural question: arbitrator's decision could not be vacated).

Furthermore, even if a review of the arbitrator's decision were authorized, his actions appear to have been entirely proper. He found that because of the "severe and material" inaccuracies in the translation, the original hearing had been a nullity. Under the circumstances, his decision to reopen was authorized and consistent with due process.

Finally, the policy of finality of arbitration awards is not impaired by allowing an arbitrator, under the notably broad language of the collective bargaining agreement, to reopen a hearing in the special circumstances of this case: that is, where defects existed in the procedures employed at the original hearing such that the hearing is properly declared a nullity.

■ 2. South Ocean's objection to the award of damages for the period subsequent to the first hearing is essentially an objection to the arbitrator's findings of fact and conclusions of law. Assuming that South Ocean were correct in contending that the Union was responsible for the faulty translation, the arbitrator's finding to the contrary would not be grounds for vacating his award. The Court may not vacate an arbitration award even if it views the facts differently than the arbitrator. *Orion Shipping & Trading v. Eastern States Petroleum Corp.*, 312 F.2d 299, 300 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963).

The arbitrator concluded that "the burden ... occasioned by [the] delay should be borne by the Employer which wrongfully discharged grievant." (Opinion of January 19, 1982 at 12). The arbitrator was empowered to award such "relief as [he] may deem proper." (Collective Agreement, Article 43, ¶ 2). Under the circumstances the Court has no power to set the award aside. *See Kurt Orban Co. v. Angeles Metal Systems*, 573 F.2d 739, 740 (2d Cir. 1978) ("If a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.") Having accorded the arbitrator the broad powers

found in the Collective Agreement, South Ocean may not ask the Court to reverse his legitimate decisions.

Accordingly, judgment for the petitioner is granted and the award is confirmed. The application to vacate the award is denied.

It is so ordered.