**MUTUAL REDEVELOPMENT HOUSES, INC. (also known as Chelsea Apartments), Plaintiff,**

v.

**LOCAL 32B–32J, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Defendant.**

**No. 88 Civ. 1366 (PKL).**

United States District Court, S.D. New York.

Nov. 30, 1988.

Shapiro, Shiff, Beilly, Rosenberg & Fox, New York City (Sidney Fox, of counsel), for plaintiff.

Manning, Raab, Dealy & Sturm, New York City (Hugh M. Merle, of counsel), for defendant.

## OPINION and ORDER

LEISURE, District Judge.

Plaintiff Mutual Redevelopment Houses, Inc., also known as Chelsea Apartments ("Chelsea" or "Employer"), commenced the present action urging this Court to vacate or modify an award rendered by an arbitrator on or about December 8, 1987. Defendant, Local 32B–32J Service Employees International Union, AFL–CIO (the "Union"), has moved to confirm the arbitrator's

**1.** Article V of the Agreement provides in pertinent part:

A grievance shall first be taken up directly between the Employer and the Union. Grievances shall be resolved, if possible, within 72 hours after they are initiated, and if they are not so resolved, shall be promptly submitted to the Office of the Contract Arbitrator. Counsel of the Union and the Employer may be present at any Grievance Procedure meeting.

award. For the reasons stated below, the Court denies plaintiff's application to vacate or modify the award, and grants defendant's motion to confirm the award.

Initially, the Court notes that the procedural posture of this case is somewhat peculiar. Actions to vacate, modify or confirm arbitration awards are, of course, normally instituted by petition. Plaintiff here filed a complaint, and the issues regarding the arbitration award are presented in the context of summary judgment motion papers. The substance and applicable legal standards, however, are the same. The Court will treat plaintiff's complaint as a petition to vacate or modify the arbitration award under 9 U.S.C. §§ 10 and 11. In accord with the following decision to confirm the award, plaintiff's complaint is dismissed with prejudice; or, stated differently, summary judgment is denied for plaintiff, and defendant's motion to confirm the award is granted. The Court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

### Background—Findings of Fact

Plaintiff is the owner of an apartment complex located at 321 8th Avenue, New York, New York 10011. Chelsea and the Union are parties to a collective bargaining agreement that covers all building service employees employed by Chelsea at the 8th Avenue complex. *See*, 1985 Apartment House Agreement ("Agreement"), attached as Exhibit B to Affidavit of Hugh M. Merle, Esq., sworn to on March 22, 1988 ("Merle Affidavit"). The Agreement covered all terms and conditions of employment, including, for example, wages, hours, and benefits to employees. That Agreement contained a grievance procedure that culminated in final and binding arbitration.[1]

Any dispute or grievance between the Employer and the Union which cannot be settled directly by them shall be submitted to the Office of the Contract Arbitrator,....

The procedure herein with respect to matters over which a Contract Arbitrator has jurisdiction, shall be the sole and exclusive method for the determination of all such issues, and the arbitrator shall have the power to award appropriate remedies, the award being final and binding upon the parties and the

On or about December 14, 1986, Robert Moran ("Moran") was terminated from his position as a part-time security guard at Chelsea. Moran filed a grievance contesting the propriety of his discharge. An arbitration was held on December 4, 1987 before the Contract Arbitrator, Marlyn M. Levine (the "Arbitrator"). The issue before the Arbitrator was: "Did the employer violate the collective bargaining agreement between the parties, specifically, Article X Clause 19 by reducing its staff without obtaining the prior written consent of the Union? And if so, what shall be the remedy?" Article X Clause 19 of the Agreement prohibits the Employer from reducing its work force, that is, terminating employees without replacing them, without first notifying the Union.

No transcript of the arbitration proceeding was made, which is not unusual for arbitrations of this nature. Affidavit of Sidney Fox, Esq., sworn to on April 6, 1988 ("Fox Affidavit"). Counsel and representatives of the parties to this litigation, as well as the employee Moran and his counsel, were present at the arbitration. Vigorous arguments were made regarding the propriety of the discharge itself, as well as what appropriate remedies and damages would be, should the discharge be deemed improper. The Employer argued that any damage award should be reduced by interim earnings from Moran's job with the United Parcel Service ("UPS"), and to that end sought to introduce Moran's W–2 form. The Arbitrator agreed to accept the W–2 form as evidence, and to give it whatever weight was appropriate. Merle Affidavit ¶ 23.

On December 8, 1987, the Arbitrator issued a written judgment (the "arbitration judgment"), as required by the arbitration clause of the Agreement. *See*, Arbitration Judgment, Attached as Exhibit C to Merle Affidavit. The arbitration judgment was issued prior to the Arbitrator's receipt of the W–2 form. In her judgment, the Arbitrator found that Chelsea had "breached *General Clause* 19(a) ... when it reduced

staff without obtaining the prior written consent of the Union." By way of relief, the Arbitrator stated:

Accordingly, I award as follows:

### AWARD

The Employer shall:

1. restore the position previously held by the grievant [Moran];

2. reinstate the grievant forthwith to the position he held with full seniority, contractual rights and benefits, and with full back pay except for eight (8) weeks when the grievant was unavailable to work; and

3. pay to the remaining employees the eight (8) weeks' pay not paid to the grievant.

Arbitration Judgment at pp. 2–3. It is apparent that, at the arbitration hearing, Chelsea was able to establish that Moran was incapacitated and would have been unable to work for an eight week period during the time he was laid off.

Chelsea petitioned the arbitrator to re-open the case. The basis of that application was that the decision was rendered before consideration of the W–2 form. The arbitrator refused to re-open the case, and Chelsea then brought the present action in this Court.

*Discussion—Conclusions of Law*

Plaintiff Chelsea, in seeking to vacate the award, essentially challenges the remedy imposed by the Arbitrator, and further asserts that the Arbitrator's conceded failure to review the W–2 form indicated error sufficient to invalidate the award.

It is fundamental that a court must grant confirmation of an arbitration award unless there is a statutory basis for vacating or modifying the award, or a nonstatutory " 'manifest disregard' of the law" requires such vacatur. *Sperry International Trade, Inc. v. Government of Israel*, 689 F.2d 301, 305 (2d Cir.1982). "The only statutory grounds for vacating an arbitration award are enumerated in section 10 of the Federal Arbitration Act, 9 U.S.C.

employee(s) or Employer(s) involved. Nothing herein shall be construed to forbid either

party from resorting to court for relief from or to enforce rights under, any award.

§ 10 (1982)." *Synergy Gas Co. v. Sasso,* 853 F.2d 59, 63 (2d Cir.1988). Chelsea is not clear in indicating a statutory basis for vacating the arbitration award; but it does argue that the actions of the Arbitrator to which it objects constitute "manifest disregard" of the law.

### 1. *Statutory Bases for Vacatur or Modification*

As noted, plaintiff Chelsea is unclear in its enumeration of a statutory basis for attacking the arbitration award. The Court will nevertheless briefly address the possible statutory justifications for setting aside the arbitration judgment. The only conceivable statutory bases are subsections (c) and (d) of 9 U.S.C. § 10, which contemplate judicial vacation of an award:

> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

> (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

As noted, it is uncontested that the Arbitrator could not have reviewed the W–2 form before rendering her judgment. The obvious issue under 9 U.S.C. § 10(c) is whether the W–2 would be "pertinent and material to the controversy."

■ If there are several possible interpretations of an arbitration award, the ambiguities must be resolved, if possible, in a manner supporting the award. *Carte Blanche (Singapore) Pte. Ltd v. Carte Blanche International, Ltd.,* 683 F.Supp. 945, 951 (S.D.N.Y.1988) (citing, *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). The Union argues, and this Court agrees, that an entirely rational conclusion of the arbitrator could have been that in this case mitigation of damages was not proper, and

the W–2 form evidence of supplemental income was therefore not relevant.

Defendant Union asserts that Moran's job at UPS was part-time. It would thus not have conflicted with his continued employment at Chelsea, and any income so earned would not have been relevant as mitigation of any back-pay damages. Moran's efforts to secure *replacement* employment were said by the Union to have been unsuccessful. Chelsea disputes these claims. As indicated above, however, the Court finds the interpretation offered by the Union plausible, and supportive of the Arbitrator's award. Given the limited scope of review here, *see, Ottley v. Schwartzberg,* 819 F.2d 373, 376 (2d Cir. 1987), the Court will not revisit factual determinations of the Arbitrator. *See, e.g., Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 740 (2d Cir.1978) ("If a ground for the arbitrator's decision can be inferred from the facts of the case the award should be confirmed.")

What the plaintiff essentially asserts here is that the Arbitrator's preliminary indication that she would review the W–2 form *required* that she deem it relevant, and further *required* that she decide that mitigation was proper and material. The arbitral process would be severely hampered if preliminary, interim evidentiary determinations foreclosed the arbitrator from making subsequent decisions that she deemed proper. This Court refuses to so constrain the decision-making process of arbitral tribunals.

Section 10(d) of 9 U.S.C. provides for a more general objection to arbitration awards; plaintiff's contention might be that the Arbitrator's remedy exceeded the power accorded to her under the Agreement. As a matter of contract, "an arbitrator's award must 'draw[ ] its essence from the collective bargaining agreement,' and the arbitrator is not free merely to 'dispense his own brand of industrial justice.'" *Brodsky v. Local 282, International Brotherhood of Teamsters,* 857 F.2d 91, 94 (2d Cir.1988) (quoting *Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

*See, also, United Paperworkers Int'l Union v. Misco, Inc.,* — U.S. ——, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

In order to withstand judicial scrutiny, the arbitrator's award must be supported only by terms that "offer even a barely colorable justification for the outcome reached." *Andros Compania Maritima, S.A. v. Marc Rich & Co.,* 579 F.2d 691, 704 (2d Cir.1978). Any doubts concerning the scope of the arbitration agreement are properly resolved in favor of coverage. *Synergy Gas Co. v. Sasso,* 853 F.2d 59, 64 (2d Cir.1988) (citing *Federal Commerce & Navigation Co. v. Kanematsu-Gosho, Ltd.,* 457 F.2d 387, 390 (2d Cir. 1972)). On the other hand, if "the arbitrator *'must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference, either …)'" *Brodsky, supra,* (quoting *Ethyl Corp. v. United Steelworkers,* 768 F.2d 180, 187 (7th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1184, 89 L.Ed.2d 300 (1986)) (emphasis in original), then the award is not drawn from the essence of the contract.

Applying these standards to the present award, the Court finds that the remedy fashioned by the arbitrator was within the contemplated scope of the agreement, and drawn from the essence of that agreement. Article V of the Agreement provides broadly that "the Arbitrator shall have the power to award appropriate remedies." The re-instatement and award of back pay, of course, are remedies routinely applied under collective bargaining agreements. The arbitrator's decision to "mitigate" the back pay award by the eight week period of Moran's incapacitation, likewise, was permissible and rational. By requiring that the payment for that eight week period be made to the remaining employees, the arbitrator avoided a windfall to either Moran or the Employer. The award was a rational, "appropriate remedy" under the Agreement, and fell within the compensatory scope of the arbitration clause.

## 2. Manifest Disregard

Plaintiff reasserts the basic objections to the arbitration award discussed above, arguing that the arbitrator exhibited "manifest disregard" of the law. Plaintiff essentially alleges that the Arbitrator's non-consideration of the W–2 supplemental income evidence, and the refusal to set off the back pay award by Moran's earnings from his part-time job, constituted manifest disregard of some law. Plaintiff's claims in this regard are without merit.

The Second Circuit in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933–34 (2d Cir.1986) articulated and clarified the standard by which district courts are to vacate an award for manifest disregard of the law. That instructive and comprehensive discussion will not be repeated or re-characterized here, except to note that "[j]udicial inquiry under the 'manifest disregard' standard is … extremely limited. The governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable." *Id.* at 934.

A cursory review of the present case in light of the above standard indicates that it does not come close to a situation which would justify vacation or modification of an arbitration award for manifest disregard of the law. Plaintiff's contention that complete mitigation is required in the present case, which it supports by citation to allegedly analogous National Labor Relations Act cases, *e.g., Phelps Dodge Corp. v. Labor Board,* 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941), does not rise to the level of defined and settled law that is necessary to establish manifest disregard. Again, the apparent factual basis of the Arbitrator's decision does not clearly indicate that complete mitigation was proper, and this Court finds that the Arbitrator's failure to set off the damage award by the full amount of the alleged mitigation did not constitute manifest disregard of the law.

## CONCLUSION

The limited review undertaken here accords with the ostensible purposes of arbitration itself, namely, reduced expense, fi-

nality and avoidance of litigation. *Synergy Gas Co. v. Sasso*, 853 F.2d 59, 63 (2d Cir. 1988); *Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.), *cert. denied*, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). In the labor relations area, especially, arbitration as a speedy and final grievance mechanism is particularly important, and a "part of the continuous collective bargaining process." *Steelworkers v. Warrior Gulf Navigation*, 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

The arbitration award is affirmed in all respects. Plaintiff's motion for summary judgment is therefore denied, and defendant's motion to confirm the award is granted. The action is hereby dismissed with prejudice, and without costs or fees.

SO ORDERED.