REXNORD INDUSTRIES, LLC, Plaintiff-Appellee, v. RHI HOLDINGS, INC., *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—08—0562

Opinion filed March 31, 2009.

■■■■■■■■■■■■■■■

Schopf & Weiss LLP, of Chicago (Peter V. Baugher, Patrick J. Heneghan, and Joseph J. Siprut, of counsel), for appellants.

McDermott Will & Emery LLP, of Chicago (Stephen P. Handler, P.C., Todd R. Weiner, Mark A. Bilut, and David J. Schriven-Young, of counsel), for appellee.

JUSTICE COLEMAN delivered the opinion of the court:

Codefendants RHI Holdings, Inc., and the Fairchild Corporation appeal an order confirming an arbitration award of approximately $1 million to plaintiff Rexnord Industries, LLC. They contend that the circuit court's confirmation of the award was improper because the arbitrator exceeded his authority under their arbitration agreement with Rexnord by granting relief to a nonparty. They also contend that because the arbitration confirmation proceeding raised contested issues of fact, the court erred in entering judgment for Rexnord on the pleadings. We affirm.

The facts underlying this appeal are largely undisputed. RHI Holdings, Inc., and the Fairchild Corporation (collectively RHI) owned property in the Ellsworth Industrial Park in Downers Grove until 1988. In August 1988, RHI transferred the property, along with one of its business divisions, to a subsidiary, Rexnord Industries, LLC. RHI sold Rexnord and the Ellsworth property to BTR Dunlop Holdings, Inc., in 1993. In a 1999 merger, Invensys plc, the British parent of the Invensys group of companies, acquired ownership of BTR through an American subsidiary, Invensys, Inc.

A 2004 class action, *Muniz v. Rexnord*, No. 04 C 4205 (N.D. Ill. September 3, 2004), sought damages from Rexnord and other Ellsworth Park property owners for contamination of the area surrounding the park. RHI and Rexnord joined the other Ellsworth Park defendants in settling the *Muniz* litigation for approximately $15.75 million. The defendants agreed that $1.8 million of the settlement total was attributable to the RHI/Rexnord property, and RHI and Rexnord agreed to allow an arbitrator to decide each company's share of that amount.

The parties presented evidence and argument to arbitrator Joseph Manko over a three-day period in June 2007. Invensys sought to intervene in the proceeding, but Manko rejected its request, ruling that it was not a party to the RHI/Rexnord agreement to arbitrate their dispute. In September 2007, Manko made extensive written findings regarding the amount and timing of the contamination found in the RHI/Rexnord property and determined that 90% of the contamination at issue occurred before RHI's August 1988 spinoff of Rexnord.

The parties agreed that RHI's 1993 agreement for the sale of Rexnord to BTR obliged it to indemnify BTR, its affiliates, subsidiaries, successors and assigns from "any and all losses, liabilities, claims, damages, \*\*\* costs, etc.," relating to RHI's ownership and operation of the property before the spinoff date, "so long as these 'Losses' arise out of or are in any way related or connected to any Environmental Law; result from any claim by any governmental or private party arising out of or in any way related or connected to any Environmental Law; or result from the generation, use, handling, storage, transport, disposal, release or threatened release of any Materials of Environmental Concern." The indemnity obligation created by the agreement applied "only to the excess of (x) Losses over (y) the sum of amounts collected by Purchaser or Rexnord from third parties."

RHI asserted that approximately $1.9 million of Rexnord's claimed losses were paid directly by Invensys. RHI argued that these sums were amounts collected "from third parties" under the 1993 agreement, and therefore, not subject to the agreement's indemnity obligation. Manko rejected this assertion. He found that Invensys was entitled to indemnification under the 1993 agreement, that it was both an "affiliate" and "successor" or the purchaser under the agreement, and that it was therefore not a "third party" whose payments were deductible from the category of "losses."

After accounting for credits resulting from prior payments, Manko directed RHI to pay Rexnord $872,545.67 in losses, including the *Muniz* settlement share and related costs, plus $145,000 in prejudgment interest. Manko also determined that RHI was obliged to reimburse Rexnord for 90% of any amounts drawn against a $306,500 letter of credit issued by Rexnord. The terms governing the letter of credit and defining its possible beneficiaries are not apparent from Manko's disposition or the appellate record.

Rexnord filed a complaint in the circuit court of Cook County for confirmation of the arbitration award. RHI filed a counterclaim which sought vacation of the award. The circuit court entered judgment for Rexnord on the pleadings. This appeal followed.

RHI contends that the Uniform Arbitration Act required the

circuit court to vacate the arbitrator's award. The Act provides that "[u]pon application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in Sections 12 and 13." 710 ILCS 5/11 (West 2004). The Act further provides that "[u]pon application of a party, the court shall vacate an award where: *** (3) the arbitrators exceeded their powers." 710 ILCS 5/12(a)(3) (West 2004). Since the Uniform Act's terms and origins parallel those of the Federal Arbitration Act (9 U.S.C. §1 *et seq.* (2006)), federal court interpretations of the federal statute are persuasive aids in construction of the Uniform Act's provisions. *J&K Cement Construction, Inc. v. Montalbano Builders, Inc.,* 119 Ill. App. 3d 663, 668 (1983).

RHI argues that the arbitrator exceeded his authority under the parties' arbitration agreement by adjudicating the claims of a nonparty, Invensys. This argument is contradicted by the plain language of the arbitration award. The award did not grant relief to Invensys. The arbitrator explicitly acknowledged that his ruling could not bind Invensys because that entity was not a party to the RHI/Rexnord agreement to arbitrate. His award directed RHI to make payments to Rexnord, not Invensys, and RHI concedes that its response to the award was to make payment of the specified amounts only to Rexnord.

Despite these facts, RHI argues that the award must be viewed as adjudicating the claims of Invensys because the losses at issue were paid by Invensys, not Rexnord. RHI cites no authority in support of its position, and its argument was rejected in the single analogous precedent revealed by our research. In *Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 741 (2d Cir. 1978), a party appealing an award argued that the arbitration panel had "in reality" determined the claim of a nonparty and exceeded its authority because the prevailing party had agreed to pay proceeds of the award to the nonparty. The Court of Appeals for the Second Circuit disagreed. It noted that the nonparty had raised no claim in the arbitration, held that the principle denying arbitrators' authority to bind nonparties was "inapplicable to the facts of this case," and affirmed the judicial confirmation of the arbitration award. 573 F.2d at 741.

RHI's characterization of the arbitrator's award as an adjudication of the claims of Invensys rather than Rexnord is similarly unsupported by the terms of the agreement for the sale of Rexnord. That agreement requires RHI to indemnify Rexnord for "losses," a term including "liabilities," "claims," "costs," and "expenses" that are "due and payable." RHI does not dispute that Rexnord became liable

for a portion of the Ellsworth defendants' settlement and for related costs of defense of the *Muniz* litigation. The agreement does not exclude from the definition of "losses" amounts paid or reimbursed by Rexnord's owners or affiliates. We accordingly conclude that the "losses" for which the arbitrator ordered compensation were those due to Rexnord under the sale agreement and were not the claims of Invensys. For this reason, we also conclude that the precedents cited by RHI as disapproval of arbitration awards for parties having no claim to the awarded damages, such as *Eljer Manufacturing, Inc. v. Kowin Development Corp.*, 14 F.3d 1250 (7th Cir. 1994), are distinguishable from the case at bar.

In further support of its claim that the arbitrator exceeded his authority, RHI contends that the award improperly considered the issue of Invensys' status as an indemnitee under the 1993 agreement. The issue was raised as a direct result of the arbitrator's examination of a subject willingly submitted by the parties: whether Invensys was a "third party" under the 1993 agreement, making its payments on behalf of Rexnord deductible from the defined category of "losses." An arbitrator's consideration of an issue is not beyond the scope of his authority if that issue is rationally derived from the matters submitted by the parties. *American Postal Workers Union v. Runyon*, 185 F.3d 832, 835-36 (7th Cir. 1999). "[I]n the absence of an express reservation, the parties are presumed to agree that everything, both as to law and fact, which is necessary to the ultimate decision, is included in the authority of the arbitrators." *Edward Electric Co. v. Automation, Inc.*, 229 Ill. App. 3d 89, 103 (1992). We hold that Invensys' indemnitee status was an issue rationally derived from the parties' submission of the 1993 agreement's interpretation to the arbitrator. As a result, we also hold that the arbitrator's consideration of the issue did not exceed his authority.

In addition to its assertion that the arbitrator should not have addressed the issue of Invensys' indemnitee status, RHI also argues that the award resolved the question incorrectly, and that Invensys lost its claim to indemnitee status by selling its Rexnord interests prior to the arbitration. This argument is an assertion of a mistake of law, which is an insufficient basis for setting aside an arbitrator's interpretation of an agreement. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 391 (1991). If any fair and reasonable mind would consider the arbitrator's interpretation to be a possible construction of a contract's terms, his ruling will be upheld on judicial review. *Rauh*, 143 Ill. 2d at 391-92. We believe that the 1993 agreement's extension of indemnitee status to Rexnord's buyer and the buyer's "successors" may be reasonably interpreted to include those buyers even after their subsequent sales of Rexnord's interests.

Finally, RHI contends that the confirmation action raised issues of fact which precluded judgment on the pleadings. But the claimed disputes relate only to RHI's allegation that Rexnord's claimed losses were paid by Invensys. These allegations were presented to the arbitrator and rendered immaterial by his ruling that payments by Invensys did not impact RHI's obligation to indemnify Rexnord for liabilities that had become due. Since RHI's allegations, even if true, established no basis for vacation of the arbitration award or for denial of its confirmation, they did not prevent the circuit court's entry of judgment on the pleadings for Rexnord.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

MURPHY, P.J., and QUINN, J., concur.