**ESSEX CEMENT COMPANY,**
**Petitioner,**

v.

**ITALMARE, S.p.A., Respondent.**

**No. 90 Civ. 3875 (JES).**

United States District Court,
S.D. New York.

May 13, 1991.

Healy & Baillie, New York City, for petitioner; Raymond A. Connell, of counsel.

Nourse & Bowles, New York City, for respondent; Armand M. Pare, Jr., of counsel.

MEMORANDUM OPINION
AND ORDER

SPRIZZO, District Judge.

Petitioner in the above-captioned action moves to confirm an arbitration award and

respondent cross-moves to vacate that award. For the reasons that follow, petitioner's motion is granted and the arbitration award is confirmed and respondent's motion is denied.

### FACTS

On or about August 13, 1986, Italmare, S.p.A. ("Italmare" or "Owner") agreed to charter the vessel M.V. MARINA DI ALIMURI to Essex Cement Company ("Essex" or "Charterer") for the carriage of cement from Eleusis, Greece, to Berth No. 28, Port Newark, New Jersey. *See* Verified Petition to Confirm Arbitration Award at Exhibit A ("Petition"). Disputes arose under the charter concerning, *inter alia,* a claim by Italmare for demurrage and a claim by Essex for extra discharge expenses resulting from a prolonged discharge stay at the berth in Newark. *See* Petition at ¶ 6.

Essex contends that the delays resulted from seawater damage to the cargo and major problems associated with the ship's cargo handling gear. *See* Affidavit of Raymond A. Connell at ¶ 3 ("Connell Affid."). Italmare asserts that Charterer was unable to receive the cargo as fast as the vessel could discharge because of Charterer's own cargo handling deficiencies. *Id.* After a thorough hearing, which consisted of various witnesses and documentary evidence, the arbitrators found that Italmare was responsible for the extensive delays and an award was issued in favor of Essex in the amount of $100,323.68 plus interest. *See* Petition at Exhibit B.

On or about June 7, 1990, Essex filed its petition to confirm the arbitration award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") to which the United States is a party as implemented by 9 U.S.C. §§ 201–08 (1988), or in the alternative pursuant to the Federal Arbitration Act, 9 U.S.C. § 9 (1988). Thereafter, on or about June 22, 1990, Italmare filed its Cross–Petition for an order vacating the award on the grounds of (1) manifest disregard of the law; (2) lack of factual foundation for the award; and (3) denial of due process.

### DISCUSSION

The parties in this action first dispute whether review of their award is governed by the Federal Arbitration Act[1] or by the Convention, which sets forth somewhat different grounds for vacating arbitration awards.[2] Both parties have differing views as to whether an arbitration award arising out of a controversy between a United States citizen and a foreign citizen would be regarded as a domestic award under United States law and therefore not subject to the Convention. *See* Article I(1) of the Convention. However, the Court need not resolve this dispute because, even assuming arguendo that the Convention is not applicable, the award must nonetheless be confirmed.

Respondent contends that the arbitrators manifestly disregarded the law in concluding that the vessel was at fault in that it did not comply with the "as fast as can self-discharge" provision in the charter. *See Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187–88, 98 L.Ed. 168 (1953); *Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier,* 508 F.2d 969, 977 (2d Cir.1974). According to Italmare, the settled American defi-

---

1. The following are grounds to vacate the award under the Federal Arbitration Act: (1) fraud; (2) bias or corruption of the arbitrators; (3) misconduct of the arbitrators which caused prejudice to a party; or (4) where an arbitrator exceeded the scope of his authority. 9 U.S.C. § 10 (1988).

2. The grounds under the Convention for refusal of recognition and enforcement of awards are: (a) the incapacity of the parties or invalidity of the agreement; (b) the lack of notice of the proceedings or inability to present one's case;

(c) the award was beyond the scope of the submission to arbitration; (d) the panel or the procedure was not in accordance with the agreement of the parties or with the law of the country where the proceedings took place; or (e) the award was not final or was set aside in the country where it was rendered. Article V(1)(a)–(e). Two further grounds are: (a) the subject matter of the dispute is not arbitrable in the country where recognition is sought; or (b) enforcement would be contrary to the public policy of that country. Article V(2)(a), (b).

nition of "as fast as can self-discharge" measures the vessel's performance by what it is in fact capable of doing, regardless of the unloading capacity of the receiving pier. *See Steamship Co. of 1912 v. C.H. Pearson & Son Hardwood Co.*, 30 F.2d 770 (2d Cir.1929). Relying upon an assumption that the vessel was capable of discharging from all five holds and could not do so only because Essex provided only one hopper for cargo discharge, respondent argues that the arbitrators manifestly disregarded the law in not applying the American law definition referred to above in finding the vessel at fault.

■ However, to find that the arbitrators manifestly disregarded the law, the alleged error "must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Carte Blanche (Singapore) v. Carte Blanche Int'l*, 888 F.2d 260, 265 (2d Cir.1989) (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986)). Therefore, the governing law alleged to have been disregarded by the arbitrators must be "well defined, explicit, and clearly applicable." *Id.* It follows that an award cannot be set aside because of an "arguable difference regarding the meaning or applicability of laws urged upon" the arbitrators. *Id.; see Parsons & Whittemore*, 508 F.2d at 977 (manifest disregard claim does not give the court a license to review the record of arbitral proceedings for errors of fact or law).

The arbitrators here found that the delay was the result of numerous defects in the vessel and its crew and was not a consequence of the discharge equipment provided by Essex. Among other things the arbitrators found that:

the cranes and grabs were rusty, the crane wires were not maintained and in poor repair with few, if any, spares on board, and the crew, with two exceptions, lacked any experience in operating cranes.... For the vessel to be the self-discharger Owner represented her to be, the vessel must not only have to have the stated number of cranes and grab-buckets but they must be in good repair and capable of being effectively used for the intended cargo functions. It is also necessary to test and train crewmembers as crane drivers in the use of the gear.... Charterer had a right to expect the vessel to perform as described by her Owner and should, therefore, not be made to suffer the monetary consequences of her failure to live up to that billing.

*See* Petition at Exhibit B, Award at 13.

It is clear, therefore, that the arbitrators found that the fact that the vessel under optimum conditions could have discharged from five holds did not preclude a finding of fault in view of the deficiencies referred to above. They therefore rejected respondent's claim that petitioner's lack of discharge facilities was the cause of the prolonged delay in unloading. Respondent's disagreement with the factual conclusions reached is hardly sufficient to establish the manifest disregard of the law which the Court must find before an arbitral award can be properly vacated on that ground.[3]

Moreover, the applicability of the American rule on these facts was far from clear. Indeed, in the very case relied upon by Italmare for the American rule, *Steamship Co. of 1912 v. C.H. Pearson & Son Hardwood Co.*, 30 F.2d 770 (2d Cir.1929), the Court concluded that that rule does not apply where, as here, the charter party contains the phrase "as customary."[4] *See* Petition at Exhibit A, cl. 2. In that circumstance, *Steamship* permits the customs and circumstances of the port to be con-

---

**3.** It should also be noted that it is not even clear that the arbitrators clearly recognized the applicability of respondent's legal principle. Indeed, the only part of the arbitrators findings that Italmare could point to for the proposition that the arbitrators recognized the correctness of the American rule and deliberately ignored it is a statement by the arbitrators which simply restates Italmare's contentions as to the correct rule of law. *See* Petition at Exhibit B at 10.

**4.** "It is certainly easy enough for [the parties] to insert the words 'custom of the port' into the charter party, if they intend to have demurrage measured by all the surrounding circumstances rather than by the capacity of the ship to load." 30 F.2d at 773.

sidered in measuring the discharge rate.[5] *Id.* at 773. Therefore, even under the case authority submitted by respondent, the arbitrators could properly consider the argument made by Essex that the type of discharge equipment it provided at the port was customary and that other vessels had discharged at much greater rates than did Italmare's vessel, using the same equipment.

Italmare also argues that the award lacks any rational foundation or factual support and must therefore be vacated. Although this ground is not listed in either Section 10 of the Federal Arbitration Act or Article V of the Convention, courts have stated that an arbitration award should be vacated if it is irrational and without any factual basis. *See, e.g., Storer Broadcasting Co. v. American Fed'n of Television & Radio Artists,* 600 F.2d 45 (6th Cir.1979), *cert. denied,* 454 U.S. 1099, 102 S.Ct. 673, 70 L.Ed.2d 641 (1981); *Swift Indus., Inc. v. Botany Indus., Inc.,* 466 F.2d 1125, 1131 (3d Cir.1972); *Amoco Overseas Oil Co. v. Astir Navigation Co.,* 490 F.Supp. 32, 37 (S.D.N.Y.1979). There is no basis to vacate the award here on that ground. The arbitrators' findings are well supported by the evidence establishing the defects in the vessel and its crew referred to above.

Nor is there any merit to respondent's claim that petitioner's claims for expenses incurred as a consequence of the discharge delay were unsupported. In fact, those claims were supported by invoices, surveyor reports, and detailed testimony. *See* Connell Affid. at ¶ 7. *See, e.g., Kurt Orban Co. v. Angeles Metal Systems,* 573 F.2d 739, 740 (2d Cir.1978); *see also Sobel v. Hertz, Warner & Co.,* 469 F.2d 1211, 1216 (2d Cir.1972).

Finally, Italmare raises a due process claim but the only apparent basis for this claim is that the only evidence supporting Essex's claim of shore labor charges was a letter by their operations manager which was submitted after the arbitration hearings. This is clearly insufficient to support a due process deprivation claim. Arbitrators are not subject to rules of evidence or procedure although they must afford a fundamentally fair hearing. *See Bell Aerospace Co. v. Local 516, Int'l United Auto.,* 500 F.2d 921, 923 (2d Cir. 1974). Italmare does not and cannot contend that it was deprived of the opportunity to argue that the evidence complained of should not be considered. Indeed, in the face of a record which indicates that the arbitrators held five separate hearings, heard testimony from eight witnesses, and accepted eighty-six exhibits, post-hearing and reply briefs, *see* Connell Affid. at 3–7, respondent's due process claim borders on the frivolous.

### CONCLUSION

Accordingly, petitioner's motion to confirm the arbitration award is granted and respondent's cross-motion to vacate the award is denied. The Clerk of the Court is directed to enter a judgment accordingly and to close the above-captioned action.

It is SO ORDERED.

---

5. Even if a court would have found, as Italmare argues, that the phrase "as customary" must be in the same clause as the language "fast as can self-discharge" in order for the circumstances of the port to be considered, the arbitrators' decision would be merely a mistake of law and thus not a ground to vacate an arbitration award. *See Parsons,* 508 F.2d 969 (2d Cir.1974).